UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EVNA T. LAVELLE & <br> LAVENIA LAVELLE, <br><br> Plaintiffs, <br><br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE <br> INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 16-1082 (RBW) |

## MEMORANDUM OPINION

Evna T. LaVelle and Lavenia LaVelle, the plaintiffs in this putative class action, filed suit in the Superior Court of the District of Columbia ("Superior Court") against the defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), alleging that "State Farm breached its insurance contract with its insureds in the District of Columbia by failing to pay them for the diminished value [ ] of their vehicles after they were repaired to industry standards and committed unfair trade practices." Motion for Remand ("Pls.' Mot.") at 1. State Farm then removed the case to this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) (2012). See Notice of Removal at 1. Currently before the Court is the plaintiffs' Motion for Remand, which requests that this case be returned to the Superior Court. See Pl.'s Mot. at 1. Upon careful consideration of the parties' submissions,[1] the Court concludes that it must deny the plaintiffs' motion.

---

[1] In addition to the filings already identified, the Court also considered the following submissions in reaching its decision: (1) the Class Action Complaint ("Compl."); (2) the defendant's Answer to Class Action Complaint

(continued . . .)

# I. BACKGROUND

"On August 9, 2015, [the plaintiffs'] vehicle was struck by an uninsured driver at the corner of Half Street SE and M Street SE in the District of Columbia."  Compl. ¶ 7.  The plaintiffs' vehicle, a 2014 Audi A6, sustained damages that required over $17,000 to repair.  Id. According to the plaintiffs, "[a]s a result of the damage suffered to the vehicle in the accident, the vehicle was worth less after it was repaired than it was before the accident."  Id. ¶ 8.  State Farm, the plaintiffs' insurer, see id. ¶ 1, covered the vehicle's repair costs pursuant to the plaintiffs' Uninsured Motor Vehicle Coverage, see id. ¶¶ 2, 9, but did not cover "the diminution of value damages [the plaintiffs] suffered," id. ¶ 9.

On April 22, 2016, the plaintiffs filed their Class Action Complaint in the Superior Court as the proposed class representatives of the following putative class:

> All [State Farm] insureds with District of Columbia policies issued in the District of Columbia, where the insured's vehicle damages were covered under Underinsured Motorist Coverage, and
>
> 1. the repair estimates on the vehicle (including any supplements) totaled at least $1,000; and
>
> 2. the vehicle was no more than six years old (model year plus five years) and had less than 90,000 miles on it at the time of the accident; and
>
> 3. the vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work.
>
> Excluded from the Class are (a) claims involving leased vehicles or total losses, and (b) the assigned Judge, the Judge's staff and family.

Id. ¶ 22.  The plaintiffs allege that State Farm failed to cover the diminished value of the putative class members' vehicles pursuant to their policies, id. ¶ 6, and assert three causes of action

---

(. . . continued)
("Answer"); (3) the defendant's Response in Opposition to Motion for Remand ("Def.'s Opp'n"); and (4) the plaintiffs' Reply on Motion for Remand ("Pls.' Reply").

against State Farm: breach of contract, unlawful and deceptive trade practices in violation of the District of Columbia Consumer Protection Procedures Act (the "Consumer Protection Act"), and breach of the implied covenant of good faith and fair dealing, id. ¶¶ 35, 43, 49–51. The plaintiffs request the following relief:

    a.    Actual damages in the form of payment of the difference between the insured vehicles' pre[-]loss fair market values and their projected fair market values as repaired vehicles immediately after the accident in amounts to be determined at trial;

    b.    Treble damages or $1500 per violation of the [Consumer Protection Act] for each District of Columbia consumer, whichever is greater;

    c.    Costs of suit including reasonable attorney fees; [and]

    d.    Punitive damages in amounts to be determined at trial . . . .

Id. at 15.

On June 9, 2016, State Farm filed its Notice of Removal, removing the case from Superior Court to this Court pursuant to the Class Action Fairness Act. See Notice of Removal at 1. On July 8, 2016, the plaintiffs filed their Motion for Remand. See Pl.'s Mot. at 1. In their motion, the plaintiffs argue that this Court does not have federal subject-matter jurisdiction because State Farm has not demonstrated that the amount in controversy exceeds the $5 million threshold requirement of the Class Action Fairness Act. See id.

## II.  STANDARD OF REVIEW

The Class Action Fairness Act vests federal district courts with jurisdiction over certain class actions if (1) the putative class has over 100 members, (2) the parties are minimally diverse, and (3) the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2), (5). The claims of all putative class members are aggregated to determine the amount in controversy. Id. § 1332(d)(6). If a defendant seeks to remove a class action to federal court pursuant to the Class

Action Fairness Act, the "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, __ U.S. __, __, 135 S. Ct. 547, 554 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)). However, if the plaintiff contests the defendant's allegation, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id.

### III.  ANALYSIS

The plaintiffs argue that this Court should remand the case to the Superior Court because State Farm has failed to show by a preponderance of the evidence that the $5 million amount-in-controversy requirement for removal under the Class Action Fairness Act has been satisfied. See Pls.' Mot. at 1; Pls.' Reply at 1. The parties agree, for purposes of the removal analysis, that each class member has an average damages amount of $1,429. See Pls.' Mot. at 5; Def.'s Opp'n at 7. However, the plaintiffs dispute State Farm's calculations of three other factors: the class size, the amount of attorneys' fees, and the amount of punitive damages. See Pls.' Reply at 1–2.

#### A.  Class Size

State Farm argues that the putative class consists of 1,171 members. See Def.'s Opp'n at 7. State Farm arrived at this number by generating a report of claims "that were at least partially paid under uninsured motorist or underinsured motorist coverage[] for policies issued in the District of Columbia, where the total repair estimates were equal to or greater than $1,000." Id., Attachment ("Att.") 1 (Declaration of Jay Thorpe ("Thorpe Decl.")) ¶ 7. Then, State Farm limited the results of that report to "claims involving vehicles that were no more than six years old . . . at the time of the accident; had fewer than 90,000 miles at the time of the accident; were not leased vehicles; [ ] were not potential total losses[;] . . . [and] exclude[d] claims outside the

4

time period of April 22, 2013 through April 22, 2016." Id., Att. 1 (Thorpe Decl.) ¶ 8. The results of that search "identified 1,221 unique claims." Id., Att. 1 (Thorpe Decl.) ¶ 9. Because State Farm's software could not sort claims by "the type of physical damage suffered by a vehicle," Def.'s Opp'n, Att. 1 (Thorpe Decl.) ¶ 10, to identify only those claims involving "structural (frame) damage and/or deformed sheet metal and/or required body or paint work," Compl. ¶ 22, State Farm retained an economist, see Def.'s Opp'n, Att. 3 (Declaration of Benjamin S. Wilner, Ph.D. ("Wilner Decl.") ¶¶ 1, 8, who "derive[d]" a random sample of seventy claims, id., Att. 3 (Wilner Decl.) ¶¶ 19–24. A State Farm claims representative then "reviewed the repair estimates for the sample of [seventy] claim files and determined that all [seventy] of them involved structural or frame damage, deformed sheet metal, and/or body or paint work." Id. at 6–7; id., Att. 2 (Declaration of Scott Llewellyn ("Llewellyn Decl.")) ¶¶ 2–5. Then, "the economist retained by State Farm determined with 95% confidence that at least 1,171 of the 1,221 claims identified by State Farm involved vehicles" with the type of damage listed in the plaintiffs' class definition, id. at 7; see also id., Att. 3 (Wilner Decl.) ¶ 2, and further determined with "99.999999999999392% confiden[ce] that there are . . . [at least] 778 claims at issue in this case," id., Att. 3 (Wilner Decl.) ¶ 2.

      The plaintiffs attack State Farm's determination that 1,221 claims fit the class definition on several fronts. First, they argue that the State Farm claim representative who analyzed the seventy sample claims for the type of damage "d[id] not explain how he made the determination; nor d[id] he identify the criteria he used" to determine that all seventy claims involved the type of damage identified in the plaintiffs' Complaint, and because "[t]he repair estimates themselves are not provided, [it is] impossible to check his work and assumptions." Pls.' Reply at 4. However, Scott Llewellyn, the Claim Representative at State Farm, stated in his declaration that

he has "worked in auto claims for [sixteen] years and ha[s] been employed by State Farm for [sixteen] years," and that his declaration was "based on [his] own personal knowledge, in reliance on the regular practices and procedures of State Farm in collecting and maintaining claims documentation." Def.'s Opp'n, Att. 2 (Llewellyn Decl.) ¶ 2. Llewellyn stated that he "reviewed the repair estimates for each of the [seventy] claims," and "[a]ccording to the repair estimates, all [seventy] of the claims [he] reviewed involved structural or frame damage, deformed sheet metal, and/or body or paint work for the vehicle." Id., Att. 2 (Llewellyn Decl.) ¶ 5. The Court finds that assessing the type of damage a vehicle sustained is not a complex task, especially for someone with over sixteen years of experience in the auto insurance industry, see id. Att. 2 (Llewellyn Decl.) ¶ 2, and therefore concludes that the claims representative's failure to provide further detail regarding his determination does not render his assessment unreliable. Cf. McMullen v. Synchrony Bank, 82 F. Supp. 3d 133, 138–39 (D.D.C. 2015) (holding that the defendant "met its burden to show that the class size in this case meets [the Class Action Fairness Act] requirements" by providing "a declaration stating that its business records indicate" the number of claims belonging to the class as defined in the complaint).

Next, the plaintiffs argue that Dr. Wilner, the economist retained by State Farm, "fails to state the basis for his determination that a sample of [seventy] claims is a statistically significant sample size," Pls.' Reply at 4, and thus his conclusion "that [seventy] claims adequately model the 1221 population of State Farm Claims" amounts to "pure conjecture" that is insufficient to support its assertion of jurisdiction, id. at 5. But according to Dr. Wilner, he was "asked to derive the sample size required to draw valid statistical conclusions about the third, Bodywork/ Paint Damage criterion. Relying on [his] significant statistical experience, [he] estimated the sample size to be [seventy] claims." Def.'s Opp'n, Att. 3 (Wilner Decl.) ¶ 20. In the absence of

6

any contradictory evidence offered by the plaintiffs, see Pls.' Reply at 4 (stating only that "[s]ample size impacts statistical significance"), the Court declines to reject Dr. Wilner's estimation that seventy claims is a valid sample size, given Dr. Wilner's qualifications and experience, see Def.'s Opp'n, Att. 3 (Wilner Decl.) ¶¶ 7–11.

Finally, the plaintiffs challenge State Farms' reliance on the 1,177 claims it used to prove the amount in controversy, which Dr. Wilner states he is 95% confident is the correct number of claims to consider, rather than on the lower figure of 778 claims, which Dr. Wilner states he is over 99% confident is the correct number of claims to consider. Pls.' Reply at 5–6. According to the plaintiffs, State Farm's reliance on the less probable figure demonstrates that State Farm "has failed to show more likely than not" that the amount in controversy will exceed $5 million. Id. at 6. Considering the standard of proof—preponderance of the evidence—State Farm is obligated to satisfy, the Court fails to appreciate how the plaintiffs can plausibly argue that Dr. Wilner's 95% confidence level fails to establish that it is "more likely than not" that the correct number of claims to evaluate is 1,177. See S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1317 (11th Cir. 2014) ("Estimating the amount in controversy is not nuclear science; it does not demand decimal-point precision."). In any event, even if the Court credits Dr. Wilner's lower figure of 778 claims, the amount in controversy nonetheless exceeds the $5 million threshold with the inclusion of the demand for punitive damages, which is discussed below.

      **B.**    **Attorneys' Fees and Punitive Damages**

In the Complaint, the plaintiffs include demands for "reasonable" attorneys' fees and punitive damages in their prayer for relief. Compl. at 15. The plaintiffs allege that the class will include 323 claims, with $1,429 as the average amount of compensatory damages recoverable per claim. Id. ¶ 14. The plaintiffs then state:

> These figures determine that the total amount sought in compensatory damages in this action will be approximately $461,567.00. An award of treble[] damages under the [Consumer Protection Act] increases damages to $1,384,701. Applying a maximum recovery of 50% of this common fund for attorney fees ($692,350.50) increases this amount to $2,077,051.50. Any award of punitive damages is purely speculative but, even if the award is 100% of trebled damages and attorney fees, the amount in controversy is nonetheless below $5 million.

Id. Both attorneys' fees and punitive damages are authorized under the Consumer Protection Act, see D.C. Code § 28–3905(k)(2)(B)–(C) (2015); see also Ford v. Chartone, Inc., 908 A.2d 72, 80–81 (D.C. 2006) ("The [Consumer Protection Act] affords a panoply of strong remedies, including treble damages, punitive damages and attorneys' fees, to consumers who are victimized by unlawful trade practices." (quoting Dist. Cablevision Ltd. v. Bassin, 828 A.2d 714, 717 (D.C. 2003)).

### 1. Whether State Farm Waived the Attorneys' Fees and Punitive Damages Factors

The plaintiffs argue that because State Farm did not put forth any evidence regarding the amounts of attorneys' fees and punitive damages in its Notice of Removal, State Farm waived these grounds upon which to contest the amount in controversy. See Pls.' Reply at 9. The Court disagrees.

State Farm referenced both attorneys' fees and punitive damages in its Notice of Removal. See Notice of Removal at 3 ("Punitive damages and attorneys' fees, which are sought in the Complaint, would increase that amount [in controversy] further."). The Supreme Court stated in Dart Cherokee Basin that "a defendant's notice of removal [pursuant to the Class Action Fairness Act] need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." __ U.S. at __, 135 S. Ct. at 554. After the plaintiffs challenged State Farm's grounds for removal in their Motion for

8

Remand, see generally Pls.' Mot., State Farm provided evidence to support its grounds for removal, see generally Def.'s Opp'n.  Accordingly, because State Farm was not obligated to present evidence regarding attorneys' fees and punitive damages in its Notice of Removal, the plaintiffs' argument that State Farm waived the right to use these factors in its calculation of the amount in controversy is without merit.

### 2. Whether the Plaintiffs Pleaded 50% Attorneys' Fees and 100% Punitive Damages

According to State Farm, the "[p]laintiffs have pl[ead]ed the maximum recovery of 50% of the trebled damages as attorneys' fees," as well as "punitive damages in the amount of 100% of trebled damages and attorneys' fees," and therefore State Farm properly relied on these percentages in determining the amount in controversy.  Def.'s Opp'n at 8.  The plaintiffs contend in response that they did not "plead a 50% attorney fee and for punitive damages of 100% of compensatory damages.  To the contrary, these percentages were only illustrative of unrealistic figures, not a demand."  Pls.' Reply at 2; see also id. at 3 (arguing that these percentages were used "as 'maximum' and 'speculative' figures to illustrate the extreme unlikelihood of the amount in controversy in this action ever crossing the [federal] jurisdictional threshold").

The Court concludes that State Farm properly relied on the percentages for attorneys' fees and punitive damages the plaintiffs included in their Complaint.  Other members of this Court have approved of reliance by defendants on plaintiffs' statements in their complaints regarding the amount of damages sought to establish the amount in controversy.  See McMullen, 82 F. Supp. 3d at 139–40 ("Based on [the defendant's] evidence of the number of putative class members and [the plaintiff's] statement about the amount of money she seeks for each member of the class, it appears that the amount in controversy exceeds $5 million."); Cannon v. Wells Fargo Bank, N.A., 908 F. Supp. 2d 110, 113–14 (D.D.C. 2012) (denying the plaintiff's motion to

9

remand and noting that "the Complaint in aggregate requests more than $6,107,000 in damages, plainly meeting the requirements of the Class Action Fairness Act," and "[t]he [p]laintiff cannot amend her Amended Complaint to limit her request for damages through an assertion in her motion"). The Court notes that State Farm also relied on the average damages per claim of $1,429 that the plaintiffs asserted in their Complaint, see Def.'s Opp'n at 7, but the plaintiffs do not contest State Farm's reliance on that figure, see Pls.' Mot. at 5 (noting without challenge that State Farm adopted the plaintiffs' average claim value of $1,429). Indeed, the plaintiffs themselves state in their motion that in general, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith," and that "'[e]vidence establishing the amount is required' where, as here, defendant's assertion of the amount in controversy contradicts the pleadings." Id. at 6 (emphasis added) (first quoting St. Paul Mercury Indem. Co. v. Red Cab. Co., 303 U.S. 283, 289 (1938), then quoting Dart Cherokee Basin, __ U.S. at __, 135 S. Ct. at 554–55); cf. S. Fla. Wellness, 745 F.3d at 1315 (noting that, for amount in controversy purposes, the value of injunctive or declaratory relief is "the monetary value of the benefit that would flow to the plaintiff if the [relief he is seeking] were granted" (alteration in original) (quoting Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1268 (11th Cir. 2000)). Accordingly, the Court concludes that the plaintiffs pleaded 50% attorneys' fees and 100% punitive damages in their Complaint, and therefore State Farm appropriately relied on these percentages in calculating the amount in controversy.

As for the plaintiffs' argument that these percentages were mere illustrations, not requests for relief, the Court notes that the plaintiffs relied on these percentages to determine the amount in controversy in order to establish in their Complaint that jurisdiction was proper in Superior Court, see Compl. ¶ 14, and thus State Farm appropriately relies on those same figures to

establish that jurisdiction is proper in this Court, see Dart Cherokee Basin, __ U.S. at __, 135 S. Ct. at 553 (noting that it would be "anomalous to treat commencing plaintiffs and removing defendants differently with regard to the amount in controversy").  Thus, the Court concludes that the plaintiffs put the percentages regarding attorneys' fees and punitive damages at issue in their Complaint, and thus, State Farm appropriately relied on them in its calculation of the amount in controversy.  See Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (noting that the defendants have "estimat[ed] the damages that are in controversy," but "they are still free to challenge the actual amount of damages in subsequent proceedings and at trial"); see also S. Fla. Wellness, 745 F.3d at 1315 (noting that calculating the amount in controversy for purposes of the Class Action Fairness Act "is less a prediction of 'how much the plaintiffs are ultimately likely to recover,' than it is an estimate of how much will be put at issue during the litigation" (quoting Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010)).

### 3. Whether 50% Attorneys' Fees Is Legally Possible to Recover

The plaintiffs argue that "State Farm improperly adds attorney[s'] fees . . . on a 'percentage of the fund' basis."  Pls.' Reply at 2.  According to the plaintiffs, if their class action is successful, it "will produce a common fund of damages from which attorney[s'] fees can be paid," but that "[i]f attorney[s'] fees on top of damages were awarded, they would be calculated on a lodestar basis under the [Consumer Protection Act]."  Id. at 6.  Although the Court already concluded that State Farm appropriately relied on the plaintiffs' attorneys' fees percentage as pleaded in their Complaint, see infra Part III.B.2, the Court need only include that percentage in its calculation of the amount in controversy if it is pleaded in good faith, i.e., the amount is legally possible to recover, see Morgan v. Gay, 471 F.3d 469, 474 (3d Cir. 2006) ("There is,

however, a broad good faith requirement in a plaintiff's complaint with respect to the amount in controversy. Good faith in this context is entwined with the legal certainty test, so that a defendant will be able to remove the case to federal court by showing to a legal certainty that the amount in controversy exceeds the statutory minimum." (citations and internal quotation marks omitted)).

The Court agrees with the plaintiffs that attorneys' fees awarded under the Consumer Protection Act are awarded on a lodestar basis. See, e.g., Beck v. Test Masters Educ. Servs., Inc., 73 F. Supp. 3d 12, 16 (D.D.C. 2014) (noting that the Consumer Protection Act provides for reasonable attorneys' fees, which are calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate). The Court has been unable to identify a case in which attorneys who successfully litigated a class action under the Consumer Protection Act were awarded fees as a percentage of the common fund. Cf. In re InPhonic, Inc., 674 F. Supp. 2d 273, 282–83 (D.D.C. 2009) (reducing the amount of attorneys' fees allowed under the parties' settlement agreement and determining a reasonable fee by calculating the hours reasonably expended on the litigation multiplied by a reasonable hourly rate). Accordingly, the Court concludes that, because State Farm presented no evidence regarding an estimation of reasonable attorneys' fees, such fees cannot be included in calculating the amount in controversy. See Sloan v. Soul Circus, Inc., No. 15-01389(RC), 2015 WL 9272838, at *14 (D.D.C. Dec. 18, 2015) (refusing to include attorneys' fees in its calculation of the amount in controversy because the defendant did "not present[] arguments or evidence about attorney[s'] fees").

## IV.     CONCLUSION

Even assuming a class size of 778 claims, the lower figure cited by Dr. Wilner, see Def.'s Opp'n, Att. 3 (Wilner Decl.) ¶ 2, multiplied by $1,429 per claim as the average amount of damages recoverable, results in total compensatory damages of $1,111,762.  An award of treble damages under the Consumer Protection Act would increase the amount of damages to $3,335,286.  Assuming a 100% award of punitive damages, the final amount in controversy would increase to $6,670,572.  Because the amount in controversy exceeds the $5 million threshold required by the Class Action Fairness Act, see 28 U.S.C. § 1332(d)(2), the Court concludes that the requirements for federal subject matter jurisdiction are satisfied.  Accordingly, the Court will deny the plaintiffs' Motion for Remand.

**SO ORDERED** this 22nd day of February, 2017.[2]

REGGIE B. WALTON<br>United States District Judge

---

[2] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.