**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EVNA T. LAVELLE and LAVENIA LAVELLE, individually and as the representative of all persons similarly situated and in a representative capacity on behalf of the interests of the general public,<br><br>    Plaintiffs,<br><br>  v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>    Defendant. | Civil Action File<br>No. 1:16-cv-01082-RBW<br><br>(Removed from the Superior Court of the District of Columbia, Civil Actions, Case No. 2016 CA 003040 B)<br><br><br>**REQUEST FOR ORAL ARGUMENT** |

**MOTION FOR CLASS CERTIFICATION AND
STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Evna T. Lavelle and Lavenia Lavelle, Plaintiffs, individually and as the representatives of all persons similarly situated and on behalf of the general public, seek a class recovery for the failure of Defendant State Farm Mutual Automobile Insurance Company ("State Farm") to pay diminished value ("DV") loss on claims paid by State Farm under their Uninsured and Underinsured Motorist Property Damage coverage ("UIM PD") during the Class Period.

## I. MOTION/RELIEF REQUESTED

Plaintiffs move the Court for an order certifying the following class in the within action:

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 1

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

All insureds of Defendant State Farm with District of Columbia policies issued in the District of Columbia, where the insured's vehicle damages were covered under their UIM PD coverage, and

> 1. the repair estimates on the vehicle (including any supplements) totaled at least $1,000;
>
> 2. the vehicle was no more than six years old (model year plus five years) and had less than 90,000 miles on it at the time of the accident; and
>
> 3. the vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work.

Excluded from the Class are a) claims involving leased vehicles or total losses, and b) claims of the assigned judge, the judge's staff and family.

*See Original Class Action Complaint for Damages* ¶22 [Dkt.1-1] ("Complaint").  Given the applicable statute of limitations, s*ee* D.C. Code Ann. § 12-301(7) ("simple contract, express or implied—3 years"), the proposed class would include claims arising on or after April 22, 2013, until the Court certifies the matter and the Class is notified.

Plaintiffs support their motion for class certification by the argument and authorities presented in this memorandum and by the Declaration of Stephen M. Hansen [Dkt. 36] and the evidence it authenticates.[1]

---

[1] Given that State Farm's policy regarding DV is consistent nationwide in material respects, State Farm has agreed, *see Email from Thomas Curvin to Charles Hunter* (Nov. 15, 2017) [Dkt. 36-1], that Plaintiffs may use testimony and documents obtained in a similar action brought against it in Washington state in *Jenkins v. State Farm Mut. Auto Ins. Co*., No. 3:15−cv−05508−BHS (W.D. Wash. filed July 23, 2015). To facilitate such use, the parties asked the Court to enter a protective order similar to the order in *Jenkins. See Order Granting Joint Motion for Stipulated Protective Order* [Dkt. 33].

Although State Farm has produced here the same nationwide materials referenced in the *Jenkins* depositions, Plaintiffs have used the *Jenkins* documents for ease of reference, as the *Jenkins* Rule 30(b)(6) deposition testimony referenced herein incorporates those documents in pertinent part. Where State Farm has produced documents *specific* to the District of Columbia or to the Lavelles' claim, Plaintiffs use those documents.

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 2

## II. INTRODUCTION

Diminished value loss arises in the context of the partial destruction of property. "The basic rule for the measure of damages for partial destruction or injury to chattel is the difference in value of the chattel immediately before and after the injury." *Am. Serv. Ctr. Associates v. Helton,* 867 A.2d 235, 240 (D.C. 2005). "An alternative measure is the reasonable cost of repairs necessary to restore its former condition." *Id.* The "remaining reduction in value after repairs are made" is recoverable as "residual diminution in value." *Id.* at 241.

The State Farm automobile insurance policy in force during the Class Period provides coverage for diminished value losses, as follows, in pertinent part:

**UNINSURED MOTOR VEHICLE COVERAGE**

**Insuring Agreement**
*We* will pay compensatory damages for *... property damage* an **insured** is legally entitled to recover from the owner or driver of an **uninsured motor vehicle**.

*Property Damage* means damage to:
   1. *your car....*

*State Farm Car Policy Booklet* [Dkt. 36-2] at 15 (SF(Lavelle)000016). The insuring language for underinsured vehicles is the same. *Id.,* at 20.

Although State Farm excludes diminished value loss in its definitions of "loss" in other parts of the policy, it is not excluded from Uninsured Motor Vehicle Coverage. *Compare id.,* at 14-20 (Uninsured and Uninsured Coverage; no exclusion or limitation or for DV) *with id.,* at 25 (Physical Damage Coverages; "**Loss** does not include any reduction in the value of any ***covered vehicle*** after it has been repaired, as compared to its value before it was damaged."); *and with id.,* at 28  (Comprehensive Coverage and Collision Coverage; "The cost to repair the ***covered vehicle*** does not include any reduction in the value of the ***covered vehicle*** after it has been

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 3

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

1
2
3
4

repaired, as compared to its value before it was damaged."). Thus, State Farm knows how to

exclude diminished value but has not done so in its coverage for uninsured and underinsured

motorists in the District of Columbia.

5
6
7
8
9
10
11

As shown below, District of Columbia law has recognized since 2005 that

"compensatory damages" for property damage includes diminution of value. Given its policy

language, and lack of an exclusion, State Farm does not dispute coverage for DV and defines it

as "the difference between the market value immediately before the accident and market value

after the accident and repairs have been made."[2]

12
13
14
15
16
17
18
19
20
21
22
23
24
25

This case presents a core common issue of whether the market value of vehicles within

the putative Class is *less* after repair such that residual diminution in value exists. Plaintiffs

have defined the proposed Class to capture the vehicles repaired by State Farm that they believe

common evidence will show have measurable residual diminution in value, even after proper

repair. Specifically, Plaintiffs define the Class to include only newer (less than 6 years old),

less used (90,000 miles or less) vehicles involved in more serious accidents, as indicated by a

significant dollar amount ($1000 or more) of certain kinds of damage (body or paint or

frame/structural repairs) which can be detected post repair, versus simple repairs of replicable

non-painted parts, such as lights, chrome bumpers, glass, etc, where the market may not devalue

the vehicle after repair.

26
27
28
29
30
31
32

Repair of these types of damage, even to industry standards in auto-body collision

repair, leaves tangible differences, as the vehicle cannot be restored *fully* to its pre-loss

condition. The presence of these *tangible and identifiable* differences, irrespective of repair,

---

[2] *Deposition Transcript of Nicki Millan as Rule 30(b)(6) Designee* [Dkt. 36-3] 26:3-27:4.

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 4

reduce the vehicle's fair market value, a loss recoverable under the State Farm policy, but a loss that State Farm does not adjust or pay in the usual course.

As in prior certified cases where the insurer conceded coverage, as State Farm concedes it here, the questions on the merits involve the following three issues:

1. whether *market value loss* is present of for vehicles in the Class such that it is recoverable under State Farm's policies UIM PD coverage;

2. whether the method used by State Farm to determine DV loss, or the proposed regression analysis prepared by Plaintiffs' expert, Dr. Bernard A. Siskin (or other means when the merits are reached) more fairly compensates members of the proposed Class for their DV losses; and

3. whether State Farm's policies and practices in addressing DV (or, more often, not addressing it) violates unfair trade practices laws, here the District of Columbia Unfair Claims Settlement Practices statute, D.C. Code Ann. § 31-2231.17 (West), or the regulations issued pursuant to the statute, P&C CLAIMS SETTLEMENT - DC, Reg. Guid. DC CLAIMS SETTLEMENT - P&C (Feb. 26, 2015).

The Court can better address these questions in a class action context. A single determination of numerous Class claims based on common evidence and on the common DV claims adjustment practices of State Farm during the class period will be more efficient than numerous individual actions and will promote uniformity in decisions.  Moreover, the small dollar amount of each claim makes adjudication on a claim by claim basis impractical and, by comparison, a class action more manageable.

### III. STATEMENT OF FACTS

Plaintiffs' claim is typical of those of other class members. The Court may decide their claim—like all claims in the proposed Class—based on the common claims adjustment practices of State Farm and on a common body of evidence of diminished value loss.

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

### A. *Plaintiffs' Claim is Typical of Class Claims*

Plaintiffs are typical members of the proposed class. They bought a State Farm automotive policy, paid premiums, and made a claim for loss when their insured automobile was damaged in an accident. They filed a claim and made their vehicle available to State Farm for determination and payment of their loss, if it wished to do so. State Farm then failed to adjust the loss to include diminished value. In sum, although Plaintiffs took the appropriate measures to receive compensation from State Farm for the damages they incurred, State Farm failed to pay Plaintiffs diminution of value damages. Plaintiffs' interests in receiving such payment are identical to those of other, unnamed members of the proposed class.

More specifically, on August 9, 2015, an uninsured vehicle struck Plaintiffs' vehicle at the corner of Half Street SE and M Street SE in the District of Columbia. *State Farm's Auto Claim File Print* (*Claim File*) [Dkt. 36-4] at SF(Lavelle)000054. The responding police officer found the uninsured driver at fault and cited him for traffic violations and for operating a vehicle without insurance, among other violations. *Id.,* at SF(Lavelle)000055; Metropolitan Police Department, Washington, DC, *Traffic Crash Report* [Dkt. 36-5] at 8 ("Crash Report").

When Plaintiffs presented their vehicle to have their loss adjusted and paid, State Farm determined that Plaintiffs' insured vehicle was a 2014 Audi A6 ("the vehicle"), *Claim File* [Dkt. 36-4] SF(Lavelle)000059, with 18,228 miles on it the day of the accident. *Id.* SF(Lavelle) 000061. State Farm records also show that the vehicle sustained damage to the driver's side and front, the front bumper and the passenger front. *Id*. SF(Lavelle)000062. The Claims file also notes damage to the rear bumper of the vehicle. *Id.* Per the Claims File, total repair costs – as shown by the final repair estimate, including supplements exceeded $21,000. *Id.* SF(Lavelle)000096. State Farm records also show how it assessed the percentage liability of

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

each participant in the accident. *Id.* SF(Lavelle) 000093-0000094 (showing Lavenia Lavelle and other participants 0% liable and Marcell Jones 100% liable).

Absent from the Claims File, however, is any evidence that State Farm notified Plaintiffs about coverage for DV losses or otherwise adjusted their loss or offered to compensate them fairly and adequately for the diminution of value damages they suffered. Accordingly, Plaintiffs bring this suit to obtain proper relief for themselves and for others similarly situated and the general public.

Plaintiffs allege that Defendant's failure to pay for this type of loss under its District of Columbia insurance policy's UIM coverage breached its standard contract with its policy-holders and members of the Class by failing to pay a recoverable loss. This failure to pay also violated the DCCPPA because thereby State Farm engaged in an unlawful trade practice. *See* D.C. Code Ann. § 28-3904. Finally, State Farm's uniform practice of not paying for DV under UIM PD claims breached the Implied Covenant of Good Faith and Fair Dealing implicit in its standard insurance contract.

### B. State Farm's Common Diminished Value Practices

State Farm has a common claims adjustment practice on diminished value cases. Indeed, its DV adjustment practices are uniform nationwide.  Unlike some insurers who use third party repair estimates, ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████. *Deposition Transcript of John Gallup as Rule 30(b)(6) Designee* [Dkt. 36-6] 18:24-19:6. ████████████████████ ████████████████████████████████████████████ ████████████████████████. *Id.* 25:25-26:6; 28:6-29:22; 31:12-18.

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ . *Id*. 36:22-38:6; 38:7-39:4; 40:4-43:18. ████████████

████████████████████████ *Id*. 44:9-14.

These uniform sources of damage data and vehicle characteristics allow the parties to identify Class members from the claims data State Farm has collected during the Class period. *See Declaration of Bernard R. Siskin* [Dkt. 36-7] ¶¶ 5, 8-9.

Further, as with Plaintiffs' claim as shown above, on every UIM PD claim, ███████████████████████████████████████████████████ *Deposition Transcript of Nicki Millan as Rule 30(b)(6) Designee* [Dkt. 36-3] 66:10-70:2. State Farm uses these determinations ███████████████ *Id*. 67:19-22. Accordingly, no individual determinations of fault and comparative fault will be necessary to deliver a Class remedy in this case, because State Farm has already made these determinations and documented them in its Claims Files.

Discovery in *Jenkins* revealed that, since 2010, whenever a UIM PD claim was opened in Washington, ██████████████████████████████████████████████ . Millan Dep. [Dkt. 36-3] 18:1-20; Millan Dep. Ex. 11. Plaintiffs have located no similar notice in the District of Columbia materials produced by State Farm.  Thus, Plaintiffs doubt that State Farm takes any effort to inform its insureds about DV coverage in the District of Columbia; certainly no evidence of any similar disclosure has been produced.

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 8

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

When presented with a UIM PD DV claim by the few insureds *who know from a source other than State Farm of the ability to make a DV claim,* ████████████████████████ ████████████████████████ ████ Instead, if it does an inspection, ████████████████████████████ ████████████████████████████████ Millan Dep. at 36:4-46:14. As to DV, State Farm will ██████ ████████████████████████████████ . *Id*. at 42:22-43:22.  However, State Farm does not ████████████████████████ ████████████ ." *Id*. 64:6-65:11.

Nor does State Farm provide ████████████████ ████████████████████████████ *Id*. 33:10-34:1. [4] State Farm tells its adjusters that ██████████

--------------------

[3] ████████████████████████ ████████████████████████████ ████████████████████████ ██████████

[4] State Farm's process can be summarized, as follows:

████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████

Millan Dep. [Dkt. 36-3] 43:7-22.  The process applied by State Farm in the District of Columbia is no different, *other than no disclosure being made* via a Word Track.

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 9

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

██████████████████████████████████████████████████████

████████████████████████ Millan Dep. [Dkt. 36-3] Ex. 12. However, such information is not

shared with the insured, because State Farm does not want to ████████████████████

████████████████. *Id*. 48:15-49:9.

Thus, State Farm does not ████████████████████████████

████████████████ *Id*.37:1-38:13; Gallop Dep. [Dkt. 36-6]  15:1-16:12.   If no additional

claim of damages for improper repairs is made,███████████████████████████

██████████████████████████████████████████████

███████. Milan Dep. 37:1:-38:13; Gallop Dep. 21:8-22:14; 23:8-18; 35:11-20; 48:20-49:1; 51:16-

24; 57:18-21; 59:3-22.  The repair estimate (and any submission by the insured) allows State

Farm to determine DV, if it is pressed to so do.

Although State Farm's position is that █████████████████████████████

████████████████████████[5] State Farm admits ██████████████████

████████████ Milan Dep. [Dkt. 36-3] 34:19-35:10. Accordingly, the 2011 version of

State Farm's national claims manual contains a diminished value section directing adjusters to

"█████████████████████████████████████████

██████████████████████████████████████████████. *Id*.

35:11-36:3; 44:9-13; LAVELLEEVNA00000005PROD [Dkt. 36-8]. State Farm acknowledges,

---

[5] A common – and illogical – refrain has been that whether a vehicle is "properly repaired" must be first determined, making certification impossible. Yet, since a projected market value is at issue, whether the vehicle is properly repaired, or repaired at all, is utterly irrelevant. As State Farm's 30(b)(6) designee admitted: █████████████████████████████████
██████████████████████████████████ Millan Dep. [Dkt. 36-3] 38:8-13.

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 10

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

as Plaintiffs' proposed damage model assumes (based upon a regression analysis of vehicle sale prices at auto auctions), that ████████████████████████████████████████ ████████████████████████████████████████████. Finally, there is no need for the loss ████████████████████.[6]

As shown below, the factors uniformly considered by State Farm to determine DV mirror in many respects the proposed Class definition in this case. Millan Dep. at 40:10-17.  These factors include the age of the vehicle at the time of the accident, its pre-loss and post-loss fair market value, and mileage.  *Id.* Additionally, State Farm looks at the market value of the vehicle after it was repaired, while assuming that it was repaired correctly. *Compare* Siskin Decl. [Dkt. 36-7] at 9 *with* Millan Dep. [Dkt. 36-3] 45:8-46:8; Millan Dep. Ex. 15, at 35-38 ("Proof of Claim" and "Burden of Proof" slides).

### C.  *Common Evidence That DV Exists on Certain Repaired Vehicles.*

Intuitively, everyone knows that a damaged vehicle, even after repairs, commands a lower fair market sales price than the same vehicle that has not suffered damage. Beyond intuition, diminished value arises because knowledgeable buyers through an inspection can find repaired accident damage and because uniform, objective, and tangible reasons exist justifying a decrease in market value due to the high risks presented by a repaired vehicle.  Through common proof, the Court may determine diminished value loss on a class wide basis and for each Class vehicle. State Farm admits as much.

---

[6] "████████████████████████████████████████ ███████████████████████████ LAVELLEEVNA00000006PROD [Dkt. 36-8].

First, Mr. John Gallup, State Farm's in-house expert and Rule 30(b)(6) designee, testified

in his Rule 30(b)(6) deposition in the *Jenkins* case that ██████████████████████████████

████████ Auto resellers do exactly what he does with a vehicle: ████████████████████████

███████████████████████████████████ Gallup Dep. [Dkt. 36-6] 55:3-

7.[7] Mr. Gallup further admitted that ████████████████████████████████████████████████

█████████, *id*. 57:22-58:1, and that ██████████████████████████████████████████████

████████████████████████████████████." *Id*. 51:2-3.  Put simply, a repainted car is

demonstrably and identifiably different, making the fact of a prior accident manifest to

knowledgeable buyers.

State Farm's body shop expert in *Jenkins*, Mr. Mike West, was even more forthcoming.

He testified that █████████████████████████████████████████████████████████████████████

█████████████████████████████. *Deposition Transcript of Mike West* [Dkt. 36-10]18:20-

19:19. More critically, testifying about a vehicle's structure, Mr. West stated that if it ████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████."

*Id.* 23:13-24. Obviously, the diminished functionality of repaired vehicles is critical. As Mr.

West testified:

---

[7] Other DV defendants, including GEICO in *McGraw v. GEICO,* No. 15-2-07829-7 (W.D. Wash.), have advanced experts who agree that areas of repair are obvious to the trained eye. As GEICO's expert, Dr. Scheffman, testified, his research of industry sources showed that body shops and buyers of used vehicles can quickly find the areas of repair in an inspection due to post-repair differences. *Deposition Transcript of David Scheffman* [Dkt. 36-9] at 9:12-10:4, 18:5-21, 49:13-23.

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 12

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

Q So anybody buying a car out in the market, if that car with a frame or structural repair, if it wasn't done exactly to manufacturer's specifications and if it isn't put exactly back into manufacturer's dimensional tolerances, and if there's been some failure to do that, you'd say that would be a safety issue?

A It definitely could be.

Q (By Mr. Nealey) And a safety issue that could result in injury or death, right?

A It could.

*Id.* 48:17-49:2 (objections omitted).

Yet, as Mr. West admitted, ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████. West Dep. [Dkt. 36-10] 32:16-

33:4, 43:14-44:1, 50:19-54:2. As Mr. West explained, █████████████████

███████████████████████████████████████████████

█████████████████████████████████

███████████████████

██████████

█████████████████████████

████████████

████

█████████████████████████

███████████████████████████

█████████████████████

███

███

█████████████████████

████████

███████ and they kind of go, ehh?

A Exactly.

*Id.* 53:24-54:12, 55:9- 55:14 (objection omitted). As Mr. West testified, the response to

damaged vehicles was ████████████████ *Id.* 49:9-10.

Similar testimony obtained by Plaintiffs' Counsel in prior cases can be presented on the

merits in this matter.  For example, Darrell M. Harber has over 25 years of experience in auto

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 13

body repair, auto physical damage adjusting, and appraising vehicles. *Declaration of Darrell M. Harber* ¶¶ 1-4 [Dkt. 36-11]. As Mr. Harber and similar experts can testify on the merits:

> [Diminished value loss] flows from the fact that when certain vehicles (those that are newer and have less mileage) have certain types of damage (frame/structure and paint/body) those damages can be seen and identified even after repair. As such a repair shop can't fully restore these types of vehicles to their pre-loss condition. Instead, market demand and market value goes down for that vehicle *even if a repair shop does the best possible job fixing it.*

*Id.* ¶6.

The repair processes used in collision repair are technologically different than auto manufacturing processes and have economic limits. The result is that accident repairs yield vehicles which are identifiably and objectively different and inferior to the vehicles' pre-loss condition. *Id.* ¶¶ 8-10. As Mr. Harber notes, for vehicles within the Class definition, and on the proposed Class Representatives' car, the extent and presence of collision body and paint repair will be easily detectible and would be visually apparent to a knowledgeable buyer, reducing the vehicles' value. *Id.* ¶¶ 11-13. As Mr. Harber can show:

> vehicles that fall within the proposed Class criteria above, are tangibly and identifiably different than they were in their pre-accident condition. Moreover, vehicles that fall within the Class will all have damage repair which can be, and is, identified by knowledgeable buyers and sellers, and as such will have diminished value.

*Id.* ¶ 17.

Second, experts like, Angelo Toglia, Jr. P.E., a licensed professional engineer with extensive experience in automotive-related issues, can testify about the uniform, objective, and tangible reasons for the decrease in market value on a damaged vehicle, as follows:

> [W]ithin a reasonable degree of engineering certainty, there exist qualitative differences in a vehicle after an accident and subsequent repair, compared to the pre-accident condition of the vehicle. These differences are a result of the loosening and/or shifting of parts (causing vibration, rattles, and other anomalies), changes in metal material properties, and undetectable (in the sense of it being impractical and infeasible to detect in collision repair) induced damage which results in collisions. During an

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 14

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

accident of the type described in the Complaint, and of the type which I understand the repair of the involved vehicle will be detectable to knowledgeable buyers, part of the energy of the collision is transmitted through the vehicle. This energy transmission creates internal force flow through the various vehicle components and is dissipated through the deformation of vehicle components in addition to reaction forces with the environment surrounding the vehicle.

…

By necessity, the material properties of spliced and/or straightened components deviate from the state prior to an accident due to changes in the properties of the materials.

*Report of Angelo Toglia* [Dkt. 36-12] ¶¶14-16.

Thus, common intuitive, visual, documentary, and expert proof explaining diminution of value can be presented for all vehicles which fall within the proposed Class.

## IV. ARGUMENT

Diminished value loss is recognized for automobile damage in the District of Columbia. Because insurers have avoided payment of this loss, a large number of viable unpaid claims exist in the District of Columbia under State Farm's UIM PD coverage for which class certification provides an economic and just remedy.  Other jurisdictions have certified classes seeking recovery of DV under UIM PD policies. For the same reasons advanced in those cases, Plaintiffs ask the Court to certify this action for class treatment.

### A.   *Diminished Value Loss is Recognized for Automobiles in the District of Columbia*.

As noted twelve years ago by the District of Columbia Court of Appeals, "[u]ntil now, we have not been presented with the argument that, despite 'full repair,' there should be further compensation when repair alone does not restore injured property (here, an automobile) to its pre-injury value." *Am. Serv. Ctr. Associates v. Helton*, 867 A.2d 235, 239 (D.C. 2005).

Our jurisprudence concerning the measure of damages for injury to an automobile thus has had a *de facto* focus on the reasonable cost of repair. There is no dispute in this case about the proof or reasonableness of the cost of the Mercedes's repair

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 15

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

because Avis's insurance carrier remitted payment for that purpose to the apparent satisfaction of all the parties before this action was instituted in the Small Claims and Conciliation Branch. Rather, the present controversy is whether the pre-litigation payment of the reasonable cost of repair extinguished ASCA's damages claim for residual diminution in worth as a matter of law.

*Helton,* 867 A.2d at 240 (citations omitted).   The appellate court ruled that repairs do not extinguish diminished value loss "when it can be shown that repair is insufficient to restore the property to its value before the injury." *Id.* at 241. "[R]esidual diminution in value does not duplicate the cost of repair because it is calculated based on a comparison of the value of the property before the injury and *after* repairs are made, *i.e.,* excluding injury compensated by damages for the cost of repair." *Id.* at 242.

The appellate court noted that its "conclusion is overwhelmingly supported by decisions in other jurisdictions that have considered the issue—including neighboring Maryland and Virginia—which allow recovery for the cost of repair made plus the residual diminution in value. A long pedigree of influential commentary also supports this position." *Id.* at 243–44 (citations omitted).

**B.     *Class Certification is Appropriate on Auto Insurance DV Claims Generally as Developed under Washington Jurisprudence.***

Similarly, courts who have considered the issue, and have developed extensive experience with these issues, have found class treatment proper for DV actions.  The state and federal courts of Washington have considered diminished value loss in the context of automobile insurance and have certified class actions for diminished value claims. Plaintiffs urge this Court to adopt the reasoning of the Washington courts, which is well-supported by the evidence developed and now presented to this Court, showing how such a case is manageable using common evidence of loss in market value.

Washington courts have repeatedly certified DV classes. In *Laughlin v. Allstate*, the

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

Washington Court of Appeals affirmed class certification in an uninsured motorist case in an unpublished order under Washington's rule 23, which is materially identical to the federal rule 23.[8]

"Focusing on commonality and predominance, [the *Laughlin* trial court] determined that each class member's claim involved 'a common nucleus of operative facts.' After a three-day hearing during which it considered extensive briefing and argument, it further determined that it could properly handle any factual or legal differences…." *Laughlin v. Allstate Ins. Co.*, 130 Wash. App. 1018 (2005) (citation omitted).

Subsequently in the *Moeller case,* the Washington Court of Appeals affirmed a certification decision in a DV case. *Moeller v. Farmers Ins. Co. of Washington*, 155 Wash.App. 133, 229 P.3d 857 (2010). The Washington Supreme Court thereafter affirmed that decision. *Moeller vs. Farmers Ins. Co. of Washington*, 173 Wash .2d 264, 267 P.3d 998 (2011) (en banc). The same class definition proposed in this case is identical to that used in *Moeller*.

The *Moeller* trial court decided that "the only conceivable method to adjudicate or resolve this case is through a class action, as the *de minimus* size of individual claims would leave policyholders without practical recourse, absent class treatment, to address the contract construction (legal) and damages (fact) issues." *Moeller*, 155 Wash. App. at 149, 229 P.3d at 865. Additionally, "[t]the trial court identified the common nucleus of operative facts, namely, that class members shared the same insurance policy, potentially suffered damage, and were allegedly harmed by [the insurer's] course of conduct." *Id.*

The *Moeller* court also concluded that the damage model developed by Plaintiffs' expert, Dr. Bernard A. Siskin, was admissible to show class-wide injury and aggregate

---

[8] *See Schnall v. AT & T Wireless Servs., Inc.*, 171 Wn.2d 260, 271, 259 P.3d 129, 134 (2011) ("CR 23 is identical to its federal counterpart") (citing *Schwendeman v. USAA Cas. Ins. Co.,* 116 Wash.App. 9, 19 n. 24, 65 P.3d 1 (2003)).

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 17

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

damages. *Moeller*, 173 Wash.2d at 280, 267 P.3d at 1005. The model also could facilitate the distribution of any class wide recovery post-judgment.

More recently, a Washington state trial court certified a diminished value class action on March 27, 2014, in *Mansker v. Farmers*, No. 11-2-0668-7 (Wash. Sup. Ct 2011) (Order attached) [Dkt. 36-13].  *Mansker* involved certain insureds with UIM PD claims from 2004 to 2014.  In certifying the *Mansker* class, the trial court found that the plaintiff there had "offered myriad types of evidence showing he can prove, using classwide proof, that vehicles suffered irreparable damage of the type the *Moeller* Courts found warrant recovery of DV loss."

The *Mansker* court also noted that "nearly identical classes, based on similar, if not the same, evidence have previously been certified in this state as class actions for litigation and settlement purposes." *Id.*

Since *Mansker*, Washington courts have certified diminished value classes for litigation purposes in the following state and federal cases:

- *Merrill v. PEMCO Mut. Ins. Co.,* No. 13-2-13764-5 (Wash. Sup. Ct Sept. 23, 2015) (order granting class certification) [Dkt. 36-14].

- *Meyers v. Am. Family Mut. Ins.,* No. 3:14-cv-05305-RBL (WD Wash. Sept 2, 2015) (order granting class certification) [Dkt. 36-15].

- *Snyder v. Farmers Ins. Co. of Washington*, No. 13-2-15638-15 (Wash. Sup. Ct Dec. 2, 2016) (order granting class certification) [Dkt. 36-16].

As Judge Ronald B. Leighton noted in certifying a Class defined identically to that before this Court, based upon a similar showing of expert proof: "The alternative method of resolution available here is adjudication of individual claims for a small amount of damages, which would present a hardship to the class members. Given the desirability of concentrating

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 18

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

these identical claims, class action is the superior method of adjudication." *Meyer v. Am. Fam*,

No. 14-cv-05305-RBL (Sept 2, 2015).[9]

      **C.**    *Certification of the Lavelles' Proposed Class is Appropriate.*

      The jurisprudence of the District of Columbia supports certification of the proposed class

before the Court.

---

[9] To the contrary of every recent case, Judge Benjamin Settle denied class certification in *Achziger v. IDS Prop. Cas. Ins. Co.*, C14-5445 BHS, 2016 WL 1276048, at *1 (W.D. Wash. Apr. 1, 2016). Whether *Achziger* was decided correctly (it is currently being appealed to the 9th Circuit), its ruling is inapposite here for several reasons.

*First*, the Lavelles' proposed class does not concern "different insurance policies, coverage provisions, and claims handling procedures," the basis on which Judge Settle found typicality lacking. The Lavelles propose a class of only UIM PD insureds.  By contrast, Mr. Achziger sought to represent a class of insureds with UIM PD, collision and comprehensive insurance, arguing his UIM PD claim was "reasonably co-extensive" with those of absent class members with collision or comprehensive coverage.  Indeed, the evidence was that the DV practices of insurer IDS did not vary by coverage. Regardless, Judge Settle's typicality concern that Mr. Achziger "seeks to represent a class of insureds who have different IDS policies than him," does not exist here.

Next, *Achziger* found Mr. Achziger's claim to be atypical on the grounds that class members were allegedly not impacted by the same course of conduct. *Achziger, Dkt91*. at 8. The evidence at bar is that State Farm's DV claims handling procedures have not changed during the class period on DV claims. See State Farm DV claims management materials for 2011, and 2014 (LAVELLEEVNA00000004PROD- LAVELLEEVNA00000008PROD) [Dkt. 38-8].  Plaintiffs further noted that the "change" that concerned Judge Settle in Achziger was that IDS had abandoned its pre-*Moeller* policy of denying DV claims outright in Washington in favor post-*Moeller* of adjusting DV claims using the common Georgia DV formula, which it applied uniformly to all three coverages to underestimate DV losses.  Whether or not this "change" is the kind that destroys typicality (an issue being appealed), it simply does not exist in the Lavelles' claim.

*Finally*, the *Achziger* Court held that individual inquiries must be made to determine which insureds are members of the class, whether class members were entitled to UIM coverage, and whether class member's vehicles were involved in a previous accident. (*Achziger*, Dkt 91 at 9 fn 4, 10).  <u>Here as noted above State Farm has already made these determinations and recorded its findings in the claims file</u>, determinations which – having been used to settle earlier parts of the claim within the duty of good faith – are binding on State Farm.

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

**1. *The Proposed Class Satisfies Rule 23.***

Class certification is a preliminary question that is distinct from the merits of the case. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178 (1974). In deciding whether to certify a class action, the question before the court is not whether the "plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* (internal quotations omitted). "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). The court may, however, consider matters beyond the pleadings to ascertain whether the claims or defenses are susceptible to resolution on a class-wide basis. *McCarthy v. Kleindienst,* 741 F.2d 1406, 1413 n. 8 (D.C.Cir.1984). The court has broad discretion in deciding whether plaintiffs have met their burden of showing that the requirements for class certification are met. *Hartman v. Duffey,* 19 F.3d 1459, 1471 (D.C.Cir.1994). *See Jones v. Rossides*, 256 F.R.D. 274, 276 (D.D.C. 2009).

**2. *The Proposed Class is Definite and Ascertainable.***

Courts have imposed "definiteness" as an "implied requirement" for class certification in addition to the express requirements in Rule 23. *See DL v. District of Columbia,* 302 F.R.D. 1, 16 (D.D.C.2013) ("Definiteness is not mandated by Rule 23 but is a judicial creation requiring that the class be (1) adequately defined; and (2) clearly ascertainable" (internal quotations omitted)). The "common-sense requirement" that plaintiffs "establish that a class exists" is "not designed to be a particularly stringent test," but rather requires plaintiffs to "be able to establish [that] 'the general outlines of the membership of the class are determinable at the outset of the litigation.' " *See Pigford v. Glickman,* 182 F.R.D. 341, 346 (D.D.C.1998) (quoting 7A Charles Alan Wright, et al., *Federal Practice & Procedure* § 1760 (3d ed.)). "The

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

level of precision ... required varies depending on the type of class sought to be certified" under

Rule 23(b). *See Kenneth R. v. Hassan,* 293 F.R.D. 254, 263–64 (D.N.H.2013); William B.

Rubenstein, *Newberg on Class Actions* § 3:7 (5th ed.)." The identity of class members should be

"readily ascertainable" with reference to "objective criteria." *See Thorpe v. Dist. of Columbia,*

303 F.R.D. 120, 139 (D.D.C. 2014). However, if such criteria are not available, an "adequate

proxy" may be used to "accurately articulate the general demarcations" of the class of

individuals who are being harmed. *Id.* (quoting *Kenneth R. v. Hassan,* 293 F.R.D. at 264)

(internal quotes omitted).

Here, as State Farm witnesses have testified and as the documentary evidence shows, the

information necessary to identify Class Members is available from State Farm's computerized

repair estimates and records of policyholder claims.  The proposed Class definition is

"sufficiently definite," as the members of the Class can be identified by examining State Farm's

electronic records, the access to which may be court-ordered. *See Oppenheimer Fund, Inc. v.*

*Sanders*, 437 U.S. 340, 355 (1978) ("Rule 23(d) also authorizes a district court in appropriate

circumstances to require a defendant's cooperation in identifying the class members to whom

notice must be sent.").

As in *Moeller*, Plaintiffs have hired a statistician to determine Class Member damages

on a class-wide basis and how to distribute those damages individually if a recovery is made.

That statistician, Dr. Bernard A. Siskin, has also looked at the issue of "ascertainability."   As he

notes in his declaration in this case, as in prior cases, a the parties can generate a class list via

computer query and, using statistical sampling of class claims, can create a damage model with

a formula that can then be applied on a claim by claim basis in a distribution phase. Siskin Decl.

[Dkt. 36-7] ¶8.

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

In any event, while it can be done in this case, class certification does not require that every individual who could possibly fall into the Class be capable of identification.  *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 639 (D. Colo. 1986).  Even if the review necessary to conclusively identify members of the Class must be done claim by claim, that fact does not defeat the ascertainability.  *Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003) ("Even if MetLife is unable to run the database on the older statistical information, the class can be identified through an examination of the individual files of each of the participants.  The fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement.")

### 3.  The Proposed Class Satisfies Rule 23(a).

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki,* 442 U.S. 682, 700–701 (1979). To justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216 (1974)).

Rule 23(a) ensures that the named plaintiffs are proper representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—"effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.' " *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982) (quoting *General Telephone Co. of Northwest v. EEOC,* 446 U.S. 318, 330 (1980)). *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348–49 (2011).  The class proposed by the Lavelles satisfies each element of the rule.

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

### a.   *Numerosity is Satisfied.*

Because of the general rule in favor of confining litigation to the named parties only, a class action is appropriate only when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although called the "numerosity" requirement, "the Rule's core requirement is that joinder be impracticable" and numerosity merely "provides an obvious situation in which joinder may be impracticable." *Newberg on Class Actions* § 3:11 (5th ed. 2014). "Nor does the requirement give hard rules for when joinder will be found to be impracticable; rather, it "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co.,* 446 U.S. at 330; *see also Taylor v. D.C. Water & Sewer Auth.,* 241 F.R.D. 33, 37 (D.D.C.2007) (there is no "specific threshold that must be surpassed").

Despite this flexible standard, courts have developed helpful rules of thumb for assessing the approximate thresholds at which joinder becomes presumptively impracticable. Absent unique circumstances, "numerosity is satisfied when a proposed class has at least forty members." *Richardson v. L'Oreal USA, Inc.,* 991 F.Supp.2d 181, 196 (D.D.C.2013); *see also Alvarez v. Keystone Plus Construction Corp.,* 303 F.R.D. 152, 160 (D.D.C.2014). Arguably, "as few as 25–30 class members should raise a presumption that joinder would be impracticable." *EEOC v. Printing Indus. of Metropolitan Washington,* 92 F.R.D. 51, 53 (D.D.C.1981). In assessing the number of potential class members, the Court need only find an approximation of the size of the class, not "an exact number of putative class members." *Pigford v. Glickman,* 182 F.R.D. 341, 347 (D.D.C.1998).

Here, because there are around 323 putative class members by Plaintiffs' estimate, *Complaint* ¶14 [Dkt. 1-1], and a much larger number per State Farm's estimate (1,171) (*see State*

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 23

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

*Farm's Opposition to Motion to Remand* [Dkt. 17] at 7), the proposed Class is without a doubt

sufficiently numerous.

### b.   Commonality is Satisfied

The second inquiry for the Court under Rule 23(a) is whether questions of law *or* fact

common to the class prior to certification.  *See* Rule 23(a)(2). But all questions of fact and law

need not be common; "a single common issue is sufficient to meet the commonality

requirement." *Walsh v. Ford Motor Co.,* 130 F.R.D. 260, 268 (D.D.C. 1990) (Commonality

"may be met where, as here, the claims of every class member are based on a common legal

theory, even though the factual circumstances differ for each member.") (citing *Joseph*, 109

F.R.D. at 640).

Commonality requires the plaintiff to demonstrate that the class members "have suffered

the same injury," *Falcon,* 457 U.S. at 157. "This does not mean merely that they have all

suffered a violation of the same provision of law.… Their claims must depend upon a common

contention—for example, the assertion of discriminatory bias on the part of the same supervisor.

That common contention, moreover, must be of such a nature that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 349–50.

Form contracts, like the insurance policies at issue here, are uniquely proper for class

treatment. *See Parker v. Bank of Am., N.A.,* 99 F. Supp. 3d 69, 82 (D.D.C. 2015) (citing *Sacred*

*Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1171 (11th

Cir.2010) ("It is the form contract, executed under like conditions by all class members, that

best facilitates class treatment.").

Moreover, as detailed above, the State Farm DV claims handling practices that Plaintiffs

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 24

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

challenge are uniformly implemented.  State Farm applies its diminished value policies company-wide. These policies—better characterized as diminished value *avoidance* policies—are: (1) non-disclosure and (2) adjusting the loss *not* to include diminished value.  State Farm's goal is to prevent its insureds from discovering their right to DV damages and its claims personnel from mentioning or paying DV losses.

State Farm's practices uniformly affected the Plaintiffs and all Class Members. First, they were told little, if anything, about coverage for diminished value. Second, if they knew enough to press a DV claim, State Farm offered Class members a DV settlement using a uniformly irrational system.

The Washington Court of Appeals' decision in *Moeller*, 155 Wash.App. 133, where common issues of law and fact were found to exist, is directly on point.[10]  The common issues of law and fact found in *Moeller* to justify certification included

- "whether the Class Members' policies covered diminished value;"

- "whether each class member's vehicle suffered reduction in value as a result of the vehicle having been in an accident without consideration of repair related diminished value;"

- "whether each class member's vehicle could be returned to pre-accident condition;" and

- whether the insurer "engaged in a common and systematic course of conduct designed to process physical damage claims so as to avoid acknowledging or paying DV claims."  *Id*. at 149.

Each of these common issues justifies certification in the Lavelles' case.

---

[10] Farmers conceded, and did not raise further, any of the CR23(a) issues on appeal to the Washington Supreme Court.  *Moeller*, 267 P.3d at 1005

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 25

### c.   *Typicality is Satisfied.*

Rule 23(a)(3) requires a finding that the representative parties' claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The requirement for "typicality" is satisfied "if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Trombley v. Nat'l City Bank,* 826 F.Supp.2d 179, 192–93 (D.D.C.2011). The facts and claims of each class member do not have to be identical. *See Daskalea v. Wash. Humane Soc'y,* 275 F.R.D. 346, 358 (D.D.C.2011). Instead, courts have found the "typicality" requirement satisfied when class representatives "suffered injuries in the same general fashion as absent class members." *See In re Vitamins Antitrust Litig.,* 209 F.R.D. 251, 260 (D.D.C.2002) (internal quotations omitted). *Richardson v. L'Oreal USA, Inc.,* 991 F. Supp. 2d 181, 196 (D.D.C. 2013).

Here, Plaintiffs are typical because, like other Class members, they bought a State Farm policy with UIM PD coverage, paid their premiums, and made a claim for loss. *Complaint* ¶¶18-19, 21. State Farm accepted coverage, inspected the vehicle and assessed the damages, but failed to notify the Lavelles of their DV loss coverage. *Id.* ¶19. Like most Class members who did not know to demand DV loss coverage, the Lavelles have been denied the benefit of their UIM PD coverage. Class members who knew to demand DV loss payments were uniformly paid amounts based on unscientific and otherwise unsupported methods of calculating DV, if paid anything at all for their DV losses.

Like other Class members, the Lavelles are entitled to recover their *full* DV damages. Trial of their claim will be the same as trial of those other members of the proposed Class, raising the same questions, with the same evidence, and arguing about the best way to calculate their DV

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

loss. Class certification will allow Class claims usually worth less than $10,000 to be proven in a way that does not require a $500,000 trial for every claim.

### d. Adequacy is Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Two criteria for determining the adequacy of representation are generally recognized: 1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *National Association of Regional Medical Programs, Inc. v. Mathews,* 551 F.2d 340, 345 (D.C.Cir.1976) *quoted in Twelve John Does v. District of Columbia,* 117 F.3d 571, 575 (D.C.Cir.1997). *Accord: Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.,* 246 F.R.D. 349, 358 (D.D.C. 2007). It is *presumed* that the interests of the representative plaintiffs do not conflict with those of the Class Members, and that counsel is adequate to represent those interests. *H. Newberg & A. Conte, Newberg on Class Actions, §3.05 at 3-25 (3d ed. 1992).*

Plaintiffs' counsel have extensive experience in successfully prosecuting class actions, including insurance coverage and diminished value cases. *See* CVs of proposed Class Counsel [Dkt. 36-26 to 36-30]. Counsel are qualified and able to prosecute the interests of the class vigorously.

Moreover, Plaintiffs will demonstrate that State Farm's common course of conduct was a systematic breach of contract and a violation of District of Columbia law by failing to disclose coverage for diminished value and then for failing to adjust and pay DV claims fairly. There is no conflict between Plaintiffs and the other Class Members, as the proposed Class representatives, the Lavelles, seek the same relief, using the same formula, for State Farm's

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 27

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

failure to pay diminished value as required by its policy.

### 4.  The Proposed Class Satisfies Rule 23(b)(3)

Under Rule 23(b)(3), the Court may certify a Class if it finds that: 1) common questions of law or fact predominate over any questions affecting only individual members; and 2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Here, Plaintiffs seek certification of a District of Columbia-only 23(b)(3) damages Class.

### a.  Common Questions of Law and Fact Predominate.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). This inquiry is like the commonality inquiry, but "[i]f anything ... is even more demanding." *Comcast Corp. v. Behrend,* 569 U.S. 27, 34 (2013). "[T]he predominance analysis logically entails two distinct steps–the characterization step and the weighing step." *Newberg on Class Actions* § 4:50 (5th ed. 2014).

First, the court must "characterize the issues in the case as common or individual." *Id.* (emphasis omitted). This determination is "primarily based on the nature of the evidence." *Id.* "Evidence is considered 'common' to the class if the same evidence can be used to prove an element of the cause of action for each member." *Kottaras v. Whole Foods Market, Inc.,* 281 F.R.D. 16, 22 (D.D.C.2012). By contrast, evidence is individualized when "members of the proposed class would need to present evidence that varies from person to person." *Id.*

Second, the Court must "compare the issues subject to common proof against the issues subject solely to individualized proof to assess whether the common issues predominate." *Newberg on Class Actions* § 4:50 (5th ed. 2013). This comparison is "a qualitative rather than a

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

quantitative concept." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). "[T]he common issues do not have to be shown to be dispositive." *In re Vitamins Antitrust Litig.,* 209 F.R.D. at 262; *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 459 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.") (emphasis in original).

At the weighing step, the Court must keep in mind that "common liability issues are typically far more important and contested and the individual damage calculations often formulaic." *Newberg on Class Actions* § 4:54 (5th ed. 2014); *see also In re Nexium Antitrust Litig.,* 777 F.3d 9, 21 (1st Cir.2015) ("Where common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.") (quotation marks and alteration omitted).

The D.C. Circuit has agreed "that the mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself to preclude class certification." *McCarthy v. Kleindienst,* 741 F.2d 1406, 1415 (D.C.Cir.1984); *see also Newberg on Class Actions* § 4:54 (5th ed. 2014) ("courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations");*Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 513 (9th Cir. 2013)( "In almost every class action, factual determinations of damages to individual class members must be made. Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution. Indeed, to decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device."); *Coleman through Bunn v. Dist. of Columbia*, 306 F.R.D. 68, 85 (D.D.C. 2015).

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

Common issues unquestionably predominate here.  With respect to liability, the overriding common questions are (1) whether State Farm established a common course of conduct was designed to avoid paying DV losses; (2) the fair measure of DV loss and the best way to obtain calculate it; (3) whether State Farm fairly paid those claims it was presented; and (4) whether State Farm breached its contract, violated consumer protection laws, or violated the duty of good faith and fair dealing in failing to adjust losses to include DV. Since this case involves the use of form contracts, it is particularly appropriate to use the class action procedure. *See Parker v. Bank of Am., N.A.,* 99 F. Supp. 3d 69, 82 (D.D.C. 2015).

Under nearly identical circumstances as exist in this case, the trial and appellate courts in *Moeller* properly found predominance where it "identified the common nucleus of operative facts, namely, that class members shared the same insurance policy, potentially suffered damage, and were allegedly harmed by Farmers' course of conduct."  *Moeller,* 155 Wash.App. at 150.

Although Plaintiff and Class Members' individual damages may vary, as detailed in Dr. Siskin's Report [Dkt. 36-7], the *amount* of their individual and aggregate damages can be calculated using available, objective information contained in State Farm's own electronic records, combined with information on market clearing sales prices for damaged and repaired and undamaged vehicles.  Because, as State Farm itself admits, diminished value is a loss in market value, Dr. Siskin will be able to calculate the amount of diminished value State Farm owed those insureds within the Class, both class-wide, and for each individual within the Class. *See Siskin Decl.* at ¶¶4-5, 8, 10-11, 13.

Using regression analysis and sampling from the Class vehicles, and building upon his work in *Moeller*, Dr. Siskin will be able, through statistics, to isolate the effect of DV on the

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

total value of the vehicle. *Id*. He will be able to determine individual damages for every (or nearly every) Class Member by applying the results of the regression analysis to the repair estimates of the individual class member. *Id*. at ¶ 13.[11]

Regression analyses are "common" statistical tools accepted as reliable by the courts.[12] *EEOC v. Gen. Tel. Co. of Nw., Inc.*, 885 F.2d 575, 577 n.3 (9th Cir. 1989).  *See also Reference Manual on Scientific Evidence: Reference Guide on Survey Research (2d. ed.)* (Federal Judicial Center, 2000), at 282.  And, courts have long found predominance of common issues and certified 23(b)(3) classes, when regression analyses can be used to calculate individual remedies,[13] provided the statistical model purporting to show predominance is sound. *See In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244 (D.C. Cir. 2013).

The Supreme Court recently underscored the important role of statistical evidence in class cases in the *Tyson Foods* case, as follows:

---

[11] "[T]he mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself to preclude class certification." *McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984). For example, if there is proof that a collectable car – which are not covered by Plaintiffs proposed damage model - was insured by State Farm and fit within the Class (which would require that collectible car that to be less than 6 years old), the vehicle owner could either exclude his or her claim and seek recovery separately, participate receiving the amount the damage model would show, or an individual estimate of DV loss could be presented.

[12] *See, e.g., Moore v. Health Care Auth.,* 181 Wn.2d 299, 332 P.3d 461, 466 (2014) ("it is not unusual, and probably more likely in many types of cases, that aggregate evidence of the defendant's liability is more accurate and precise than would be so with individual proofs of loss"); *Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 2006 WL 3371690 (D. N.J. Nov. 17, 2006), citing *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1238 (3d Cir. 1993) ("multiple regression analysis[] is reliable").

[13] *See, e.g., In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 652 (N.D. Cal. 2007) (class certification appropriate where plaintiffs' experts presented a regression analysis stating that "[i]t is not necessary that plaintiffs show that their expert's methods will work with certainty at this time" but "plaintiffs' burden is to present the court with a likely method for determining class damages") (citations omitted). *See also, In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 486 (W.D. Pa. 1999) (same); *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 691-693 (N.D. Ga. 1991) (same).

> Petitioner's reliance on *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), is misplaced. *Wal–Mart* does not stand for the broad proposition that a representative sample is an impermissible means of establishing classwide liability.
>
> …
>
> The underlying question in *Wal–Mart,* as here, was whether the sample at issue could have been used to establish liability in an individual action. Since the Court held that the employees were not similarly situated, none of them could have prevailed in an individual suit by relying on depositions detailing the ways in which other employees were discriminated against by their particular store managers. …
>
> In contrast, the study here could have been sufficient to sustain a jury finding as to hours worked if it were introduced in each employee's individual action. While the experiences of the employees in Wal–Mart bore little relationship to one another, in this case each employee worked in the same facility, did similar work, and was paid under the same policy. As *Mt. Clemens* confirms, under these circumstances the experiences of a subset of employees can be probative as to the experiences of all of them.

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1048, 194 L. Ed. 2d 124 (2016) (citing *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680 (1946)).

Dr. Siskin's regression model is based on Plaintiffs' theory of liability and in fact utilizes the same factors State Farm considers determinative of DV.

In the *Moeller* decisions, both the Court of Appeals and Supreme Court of Washington recognized the efficacy of Dr. Siskin's *then proposed* (and now completed) model as a tool to determine class-wide damages and that it was sufficient for the purposes of certification. *Moeller*, 173 Wash.2d at 280-81 (plaintiff's mathematical model appropriate, as it gave no indication that damages would be proved or awarded before causation is determined); *Moeller*, 155 Wash.App. at 150 n. 14 (plaintiff's preliminary plan on how to gather data on vehicles was appropriate). Plaintiffs believe that a rigorous analysis of Dr. Siskin's model will cause the Court to rule similarly, as has every Court to have reviewed Dr. Siskin's work, work which can be updated and expanded upon should the merits in this matter be reached.

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

### b. *Class Treatment is Superior and Manageable.*

The second requirement of Rule 23(b)(3) is that the Court find maintenance of the present action as a class action will be superior to other available methods of adjudication. "Rule 23(b)(3) favors class actions where common questions of law or fact permit the court to 'consolidate otherwise identical actions into a single efficient unit.' " *Wells v. Allstate Ins. Co.,* 210 F.R.D. 1, 12 (D.D.C.2002) (quoting *Dellums v. Powell,* 566 F.2d 167, 189 (D.C.Cir.1977)). "It has often been observed that class treatment is appropriate in situations such as the present case, in which the individual claims of many of the putative class members are so small that it would not be economically efficient for them to maintain individual suits." *Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 40 (D.D.C. 2003).

The relevant factors included in the rule are: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

The focus is on "the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, *Federal Practice and Procedure* § 1780 at 562 (2d ed.1986).

Here, the superiority considerations weigh heavily in favor of class certification: Class Members have little interest in pursuing individual actions because of the small amount of DV loss damages.  In *Moeller*, the Court of Appeals noted that because "each claim has a *de*

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

*minimis* value," individuals "are unlikely to pursue separate actions" and therefore a class action was preferable.  155 Wash.App. at 150.  Moreover, at every level in the *Moeller* appeal, the courts affirmed the trial court's finding that in a class action, the insurer's ability to investigate particular Class Member's claims and defend against the nature and extent of damages would not be impeded.  *See Moeller*, 173 Wash.2d at 280, 155 Wash.App. at 150 n.15.

Plaintiffs are aware of no pending individual actions by Class Members against State Farm for diminished value.  In fact, few of the Class Members even *know* they are owed diminished value because of the success of State Farm's DV avoidance policies.  Indeed, it would be neither economically feasible, nor efficient, for Class Members to pursue their claims on an individual basis.  The monetary recovery for most Class Members is relatively small.  Coupled with the cost of litigation, this makes vindication of Class Members' rights extremely difficult, if not impossible.  Allowing insureds to proceed as a Class affords them their only chance of recovery.

Finally, this case is manageable as a class action.  State Farm admits coverage.  Plaintiffs will prove liability through common evidence of State Farm's uniform insurance forms and uniform diminished value avoidance policies, and show that the market value of vehicles in the Class are reduced due to DV.  Damages can be calculated through use of an approach like Dr. Siskin's regression analysis model, without the need for individualized inquiries to determine Class Members' entitlement to relief or the amount of the relief.  Indeed, at its core, the controversy here is binary: Plaintiffs maintain and will prove with common evidence that Class vehicles cannot be fully restored to pre-loss condition and value; and State Farm's own 30(b)(6) designees were unable to provide any factual support for State Farm's factual assertions in adjusting these claims.

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

Forcing numerous plaintiffs to litigate the practices alleged to breach a common contract via a common insurance claims policy runs counter to the very purpose of a class action.[14]

## VI. CONCLUSION

Based on the foregoing, Plaintiffs respectfully asks the Court to GRANT their motion. The Lavelles ask the Court to appoint them to serve as class representatives and to appoint the undersigned counsel as Class Counsel.

RESPECTFULLY SUBMITTED this 1st day of December, 2017.


JACOB M. LEBOWITZ

s/ *Jacob M. Lebowitz*

By: _____

Jacob M. Lebowitz
POSEY LEBOWITZ PLLC
3221 M Street, NW
Washington, DC 20007
Telephone: (202) 524-0123
Fax: (202) 810-9009 Email:
jlebowitz@poseylebowitz.com

Jonathan Nace
NIDEL & NACE, PLLC
5335 Wisconsin Avenue, NW Suite 440
Washington, DC 20015
Telephone: (202) 478-9677
Fax: (301) 963-8135
Email: jon@nidellaw.com

---

[14] "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *AmChem Prod., Inc. v. Windsor*, 521 U.S. 591,617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F. 3d 338, 344 (1997)). *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 551 (1974) (Rule 23(b)(3) is designed to avoid "the multiplicity of activity" "in those cases where a class action is found 'superior to other available methods for the fair and efficient adjudication of the controversy.' ").

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 35

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

Scott P. Nealey
Law Office of Scott P. Nealey
71 Stevenson Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 231-5311
Facsimile: (415) 231-5313
snealey@nealeylaw.com

Stephen M. Hansen
Law Offices of Stephen M. Hansen, P.S.
1821 Dock Street, Suite 103
Tacoma, WA 98402
Telephone: (253) 302-5955
Facsimile: (253) 301-1147
Email: steve@stephenmhansenlaw.com

Charles Clinton Hunter (pro hac vice)
Reich & Binstock, LLP
4265 San Felipe Street, Suite 1000
Houston, TX 77027
Telephone: (281) 768-4731
Facsimile: (713) 623-8724
Email: chunter@reichandbinstock.com

**ATTORNEYS FOR PLAINTIFFS**

PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 36

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX

# CERTIFICATE OF SERVICE

The undersigned certifies, under penalty of perjury under the laws Washington, D.C., that on the 1st day of December, 2017, I electronically transmitted a copy of Plaintiffs' Statement of Points and Authorities in Support of Plaintiffs' Motion for Class Certification via email upon:

**Brittany Michelle Cambre**
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE
Atlanta, GA 30309
404-853-8063
Fax: 404-853-8806
Email: brittanycambre@eversheds-sutherland.com

**Gail Lynn Westover**
EVERSHEDS SUTHERLAND (US) LLP
700 Sixth Street, NW
Suite 700
Washington, DC 20001-3980
(202) 383-0353
Fax: (202) 637-3593
Email: gailwestover@eversheds-sutherland.com

**Thomas William Curvin**
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE
Atlanta, GA 30309
404-853-8314
Fax: 404-853-8806
Email: tom.curvin@eversheds-sutherland.com

**Tracey Katagi Ledbetter**
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, NE
Atlanta, GA 30309
404-853-8123
Fax: 404-853-8806
Email: traceyledbetter@eversheds-sutherland.com

**Wilson G. Barmeyer**
EVERSHEDS SUTHERLAND (US) LLP
700 6th Street, NW
Suite 700
Washington, DC 20001
(202) 383-0824

Fax: (202) 637-3593
Email: wilsonbarmeyer@eversheds-sutherland.com

DATED this 1st day of December, 2017, at Washington, D.C.

_s/ Charles Clinton Hunter_

_____

Charles Clinton Hunter

Law Offices of STEPHEN M. HANSEN, P.S.
1821 DOCK STREET, SUITE 103
TACOMA  WA 98402
(253) 302-5955; (253) 301-1147 FAX