UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EVNA T. LAVELLE & LAVENIA LAVELLE, <br><br> Plaintiffs, <br><br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 16–1082 (RBW) <br> **<u>UNDER SEAL</u>** |

## **<u>MEMORANDUM OPINION</u>**

The plaintiffs, Evna T. LaVelle and LaVenia LaVelle, bring this putative class action against the defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), pursuant to the District of Columbia Consumer Protection Procedures Act (the "Consumer Protection Act"), D.C. Code §§ 28–3901 through 3913 (2012), and District of Columbia common law, asserting claims arising out of State Farm's alleged failure to pay the diminished value of the putative class members' vehicles. See Class Action Complaint ("Compl.") ¶¶ 1, 6, 9–10, 32–51. Currently before the Court are the plaintiffs' Motion for Class Certification and Statement of Points and Authorities in Support Thereof ("Pls.' Mot."), the Defendant's Motion to Exclude Expert Testimony of Bernard R. Siskin ("Def.'s Siskin Mot."), and the Defendant's Motion to Exclude Expert Testimony of Angelo Toglia, Jr. ("Def.'s Toglia Mot."). Upon careful consideration of the parties' submissions,[1] the Court concludes that it must grant State Farm's

---

[1] In addition to the filings already identified, the Court also considered the following submissions in reaching its decision: (1) the Declaration of Stephen M. Hansen in Support of Plaintiffs' Motion for Class Certification ("Hansen Class Cert. Decl."); (2) Defendant State Farm Mutual Automobile Insurance Company's Response in Opposition to Plaintiffs' Motion for Class Certification ("Def.'s Opp'n"); (3) the Reply Memorandum on Plaintiffs' Motion for
(continued . . .)

motion to exclude the proffered expert testimony of Dr. Bernard Siskin, deny as moot State Farm's motion to exclude the proffered expert testimony of Angelo Toglia, Jr., and deny the plaintiffs' motion for class certification.

## I. BACKGROUND

The following are the plaintiffs' relevant allegations. "On August 9, 2015, [the] [p]laintiffs' vehicle was struck by an uninsured driver . . . in the District of Columbia." Compl. ¶ 7. The plaintiffs' vehicle, a 2014 Audi A6, sustained damages that required over $17,000 to repair. Id. According to the plaintiffs, "[a]s a result of the damage suffered to the vehicle in the accident, the vehicle was worth less after it was repaired than it was before the accident." Id. ¶ 8. State Farm, the plaintiffs' automobile insurance company, see id. ¶ 1, covered the vehicle's repair costs pursuant to the plaintiffs' Uninsured Motor Vehicle Coverage policy, see id. ¶¶ 2, 9, but did not cover "the [purported] diminution of value damages [the plaintiffs] suffered," id. ¶ 9.

On April 22, 2016, the plaintiffs filed their Class Action Complaint in the Superior Court of the District of Columbia ("Superior Court"), see id. at 1, 15, alleging that State Farm's failure to cover the diminished value of the putative class members' vehicles pursuant to their Uninsured Motor Vehicle Coverage policies, see id. ¶ 6, constitutes a breach of their insurance contract with State Farm, id. ¶¶ 32–38, and a breach of the insurance contract's implied covenant of good faith and fair dealing, id. ¶¶ 47–51, and violates the Consumer Protection Act, id. ¶¶ 39–46. On June 9, 2016, State Farm removed the case to this Court pursuant to the Class Action

---

(. . . continued)
Class Certification ("Pls.' Reply"); (4) the Defendant's Memorandum in Support of Motion to Ex[cl]ude Expert Testimony of Bernard R. Siskin ("Def.'s Siskin Mem."); (5) the Plaintiffs' Memorandum of Points and Authorities in Opposition to State Farm's Motion to Exclude Expert Testimony of Dr. Bernard R. Siskin, Ph.D. ("Pls.' Siskin Opp'n"); (6) the Defendant's Reply in Support of Motion to Exclude Expert Testimony of Bernard R. Siskin ("Def.'s Siskin Reply"); (7) the Defendant's Memorandum in Support of Motion to Exclude Expert Testimony of Angelo Toglia, Jr. ("Def.'s Toglia Mem."); and (8) the Plaintiffs' Memorandum of Points and Authorities in Opposition to State Farm's Motion to Exclude Expert Testimony of Angelo Toglia, Jr., P.E. ("Pls.' Toglia Opp'n").

2

Fairness Act, 28 U.S.C. § 1332(d) (2012). See Notice of Removal at 1. Thereafter, the plaintiffs filed a motion for this case to be remanded to the Superior Court, see generally Motion for Remand, which the Court denied on February 22, 2017, see Order (Feb. 22, 2017), ECF No. 21; see also Lavelle v. State Farm Mut. Auto. Ins. Co., 235 F. Supp. 3d 217, 219 (D.D.C. 2017) (Walton, J.).

The plaintiffs seek an order under Federal Rule of Civil Procedure 23(b)(3) certifying the following class:

> All State Farm insureds with District of Columbia policies issued in the District of Columbia, where the insured's vehicle damages were covered under their [Uninsured and] Underinsured Motorist [Property Damage] coverage, and
>
> 1.  the repair estimates on the vehicle (including any supplements) totaled at least $1,000;
>
> 2.  the vehicle was no more than six years old (model year plus five years) and had less than 90,000 miles on it at the time of the accident; and
>
> 3.  the vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work.
>
> Excluded from the Class are (a) claims involving leased vehicles or total losses, and (b) claims of the assigned Judge, the Judge's staff and family.

Compl. ¶ 22. The plaintiffs also seek appointment as class representatives and appointment of their counsel as class counsel. Id. ¶ 27. In support of their request for class certification, the plaintiffs proffer the expert opinion of Dr. Bernard Siskin, "a statistician[,] to determine Class Member damages on a class-wide basis and . . . distribut[ion of] [ ] damages individually if a recovery is made." Pls.' Mot. at 21; see also Hansen Class Cert. Decl., Exhibit ("Ex.") 7 (Expert Report of Bernard R. Siskin, Ph.D (Dec. 1, 2017) ("Siskin Report")) ¶ 1 ("I have been retained in this matter (a) to provide opinions on the feasibility of preparing a model to demonstrate the presence of Class wide damages and injury due to diminished value, (b) to measure the loss in

3

retail value of the vehicles in the proposed Class due to diminished value, and then (c) to determine how to apply the same method in a post-verdict distribution process."). The plaintiffs also proffer the expert opinion of Angelo Toglia, Jr., a "Research and Consulting Engineer who specializes in accident reconstruction and analysis," Hansen Class Cert. Decl., Ex. 12 (Expert Declaration of Angelo Toglia, Jr., P.E., ISO Class Certification (Dec. 1, 2017) ("Toglia Decl.") ¶ 7, "to evaluate technical issues associated with automobiles that are involved in certain accidents within six years of their original production and which fit within the proposed Class definition," id., Ex. 12 (Toglia Decl.) ¶ 2.

State Farm, on April 5, 2018, filed its opposition to the plaintiffs' motion for class certification, see generally Def.'s Opp'n, and on May 18, 2018, filed motions to exclude the proffered expert testimony of Dr. Bernard Siskin, see generally Def.'s Siskin Mem., and Angelo Toglia, Jr., see generally Def.'s Toglia Mot.

## II.   ANALYSIS

### A.   Motion to Exclude Expert Testimony

In Wal-Mart Stores, Inc. v. Dukes, the Supreme Court suggested that a court should determine whether proffered expert testimony is admissible under Rule 702 and Daubert at the class certification stage. See 564 U.S. 338, 354 (2011) ("The District Court concluded that Daubert did not apply to expert testimony at the certification stage of class action proceedings. We doubt that is so[.]" (citation omitted)). Although this Circuit has not addressed whether district judges must conduct a Daubert analysis of proffered expert testimony at the class certification stage, it has instructed that "dicta of the United States Supreme Court should be very persuasive," Gabbs Exploration Co. v. Udall, 315 F.2d 37, 39 (D.C. Cir. 1963) (internal quotation marks omitted); see Bangor Hydro-Elec. Co. v. FERC, 78 F.3d 659, 662 (D.C. Cir.

4

1996) (stating that "Supreme Court dicta tends to have somewhat greater force" than dicta from other courts). Accordingly, before turning to the plaintiffs' motion for class certification, the Court will address State Farm's motions to exclude the proffered expert testimony of Dr. Bernard Siskin and Angelo Toglia, Jr.

A district court has "broad discretion in determining whether to admit or exclude expert testimony." United States v. Gatling, 96 F.3d 1511, 1523 (D.C. Cir. 1996). Federal Rule of Evidence 702 governs the admission of expert testimony. The Rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The party seeking to introduce the expert testimony bears the burden of proving that the expert testimony is admissible under Rule 702 by a preponderance of the evidence. Rothe Dev., Inc. v. Dep't of Def., 107 F. Supp. 3d 183, 197 (D.D.C. 2015). "In Daubert . . . , the Supreme Court held Rule 702 requires the courts to ensure that expert testimony is 'not only relevant, but reliable.'" Heller v. District of Columbia, 801 F.3d 264, 271 (D.C. Cir. 2015) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993)); see Ambrosini v. Labarraque, 101 F.3d 129, 133 (D.C. Cir. 1996) ("The Daubert standard involves a two-prong analysis that centers on evidentiary reliability and relevancy.").

"Under Daubert, the district court is required to address two questions, first whether the expert's testimony is based on 'scientific knowledge,' and second, whether the testimony 'will

5

assist the trier of fact to understand or determine a fact in issue.'" Meister v. Med. Eng'g Corp., 267 F.3d 1123, 1126 (D.C. Cir. 2001) (quoting Daubert, 509 U.S. at 592). "The first inquiry forces the court to focus on 'principles and methodology, not on the conclusions that they generate,' and [ ] demands a grounding in the methods and procedures of science, rather than subjective belief or unsupported speculation." Meister, 267 F.3d at 1127 (quoting Daubert, 509 U.S. at 590). This condition goes primarily to reliability. See Daubert, 509 U.S. at 591 ("[T]he requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability."). "While rejecting a requirement of scientific certainty, the Supreme Court instructed that 'in order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation—i.e., "good grounds," based on what is known.'" Meister, 267 F.3d at 1127 (quoting Daubert, 509 U.S. at 590).

When assessing reliability, the Court may consider the following non-exhaustive list of factors: "(1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the method's known or potential rate of error; and (4) whether the theory or technique finds general acceptance in the relevant scientific community." Ambrosini, 101 F.3d at 134 (citing Daubert, 509 U.S. at 593–94). However, "[t]he trial judge [ ] ha[s] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999); see also Gilmore v. Palestinian Interim Self-Gov't Auth., 843 F.3d 958, 972 (D.C. Cir. 2016) (quoting Kumho Tire, 526 U.S. at 142) (noting that "[t]he test of reliability is 'flexible' and 'the law grants a district court the same broad latitude when it

6

decides how to determine reliability as it enjoys [with] respect to its ultimate reliability determination.'").

With respect to relevance, the Court "must determine whether the proffered testimony is sufficiently tied to the facts of the case and whether it will aid the factfinder in resolving a factual dispute." FTC v. Whole Foods Market, Inc., Civil Action No. 07–1021, 2007 WL 7632283, at *1 (D.D.C. July 17, 2007). "The Daubert Court described this consideration as one of 'fit.'" Ambrosini, 101 F.3d at 134 (quoting Daubert, 509 U.S. at 591).

### 1.   Dr. Bernard R. Siskin

State Farm seeks to exclude the expert report and testimony of Dr. Bernard Siskin on the grounds that his "proposed testimony . . . is irrelevant and inadmissible" because his "purported damages model does not actually measure recoverable diminished value as defined in [District of Columbia] law." Def.'s Siskin Mem. at 4. As discussed below, the Court will not certify the proposed class because the plaintiffs have failed to establish the predominance requirement of Rule 23(b)(3), which is apparently attributable to the plaintiffs' misinterpretation of District of Columbia law. Dr. Siskin's regression model is based on this erroneous legal standard and does not take into consideration gross diminished value when calculating damages, as required by District of Columbia law. See generally Hansen Class Cert. Decl., Ex. 7 (Siskin Report). Therefore, because Dr. Siskin's analysis is contrary to District of Columbia law, his testimony not only lacks reliability but also does not assist the trier of fact in resolving questions regarding State Farm's liability or damages. See Daubert, 509 U.S. at 597 (stating that expert testimony is inadmissible when it is not relevant "to the task at hand"); see also New York v. Microsoft, 224 F. Supp. 2d 76, 151 (D.D.C. 2002) (ascribing "little, if any, weight to" portions of expert's testimony because "many of the conclusions reached by [the expert] cannot be reconciled

7

logically with significant portions of the appellate court's opinion"). In addition, because Dr. Siskin's regression model calculates damages for a class that will not be certified, his testimony is therefore irrelevant. See Little v. Wash. Metro. Area Transit Auth., 249 F. Supp. 3d 394, 412 (D.D.C. 2017) (excluding the expert's analysis as irrelevant because it "focused on class distinctions that will not be certified"). Accordingly, the Court must grant State Farm's motion to exclude Dr. Siskin's testimony.

### 2. Angelo Toglia, Jr.

State Farm also seeks to exclude Angelo Toglia, Jr.'s declaration and testimony on the grounds that "Toglia is not qualified to give expert testimony, his methodology is not reliable . . . , and his conclusions are irrelevant to the issues before the Court on class certification." Def.'s Toglia Mot. at 1. The plaintiffs rely on Toglia's opinions in their class certification motion to prove that "there are uniform, objective, and tangible reasons justifying the market's decrease in value of a damaged and repaired Class vehicle," Pls.' Toglia Opp'n at 4, which speaks to the Rule 23(a)(2) commonality inquiry and not the predominance requirement of Rule 23(b)(3). As discussed below, the Court concludes that the plaintiffs fail to meet the predominance requirement because individual questions regarding liability predominate over issues common to the class, thereby defeating class certification. Therefore, the Court need not address the merits of State Farm's motion to exclude Toglia's testimony because his testimony is not relevant to the Court's analysis of whether class certification should be denied and a ruling on State Farm's objections can be avoided as moot. See Parker, 99 F. Supp. 3d at 90; see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). Nevertheless, State

8

Farm's motion to exclude Toglia's testimony will be denied without prejudice, such that State Farm may renew its objections if the plaintiffs later seek to rely upon Toglia's expert testimony in the context of pursuing their individual claims. See Parker, 99 F. Supp. 3d at 90.

**B.     Motion for Class Certification**

The plaintiffs' basis for certification is Rule 23(b)(3), see Pls.' Mot. at 28, and as already referenced, the plaintiffs "seek a class recovery for the [alleged] failure of . . . [] State Farm [] to pay diminished value [ ] loss on claims paid by State Farm under [its] Uninsured and Underinsured Motorist Property Damage coverage [ ] during the Class Period." Pls.' Mot. at 1. State Farm opposes class certification, arguing that the plaintiffs have failed to satisfy the commonality and typicality prerequisites for class certification under Rule 23(a)(2) and (3), as well as the predominance and superiority requirements under Rule 23(b)(3).[2] See Def.'s Opp'n at 1. Although the Rule 23(a) "prerequisites" are typically considered first, cf. Richards v. Delta Air Lines, Inc., 453 F.3 525, 529 (D.C. Cir. 2006) ("[A] class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions."), the Court need not address the parties' arguments with respect to the "prerequisites" because the plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3), see Jones v. Rossides, 256 F.R.D. 274, 276 (D.D.C. 2009); see also Parker v. Bank of Am., 99 F. Supp. 3d 69, 89–90 ("It is clear beyond cavil that the '[f]ailure to meet any of Rule 23(a) or 23(b)'s requirements precludes certification.'" (alteration in original) (citations omitted)), and therefore, will immediately address the parties' arguments regarding predominance.

---

[2] State Farm does not dispute that the plaintiffs have established the numerosity and adequacy requirements of Rule 23(a). See generally Def.'s Opp'n.

Federal Rule of Civil Procedure 23(b)(3) authorizes a court to certify a class if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Hoyte v. District of Columbia, 325 F.R.D. 485, 491 (D.D.C. 2017) (quoting Fed. R. Civ. P. 23(b)(3)). "In order to meet the predominance requirement . . . , a plaintiff must establish that the issues in the class action that are subject to generalized proof, thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." Johnson v. District of Columbia, 248 F.R.D. 46, 56 (D.D.C. 2008) (alteration in original) (internal quotation marks omitted). The predominance requirement is "more stringent," Amchem Products, Inc. v. Windsor, 521 U.S. 591, 609 (1997), and "far more demanding," id. at 624, than the commonality requirement of Rule 23(a). The plaintiffs "must, at minimum, establish widespread injury to the class." Kottaras v. Whole Foods Mkt., Inc., 281 F.R.D. 16, 23 (D.D.C. 2012) (internal quotation marks omitted). "[T]his means that [the] [p]laintiff must proffer a method that will use common evidence to show that a substantial majority of the members of the proposed class were injured by—or, put another way, that there was widespread injury to the class from—[the] [d]efendant's unlawful conduct." Id.

Here, the plaintiffs contend that "[c]ommon issues unquestionably predominate." Pls.' Mot. at 30. Although the plaintiffs appear to concede that "individual damages may vary," id., they claim the following:

> With respect to liability, the overriding common questions are (1) whether State Farm established a common course of conduct [that] was designed to avoid paying [diminished value] losses; (2) the fair measure of [diminished value] loss and the best way to [ ] calculate it; (3) whether State Farm fairly paid those claims it was presented; and (4) whether State Farm breached its contract, violated consumer protection laws, or violated the duty of good faith and fair dealing in failing to adjust losses to include [diminished value,]

10

id. The plaintiffs implore the Court to "keep in mind that common liability issues are typically far more important and contested and [that] the individual damage calculations [are] often formulaic," id. at 29 (internal quotation marks omitted), and argue "that the mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself to preclude class certification," id. (quoting McCarthy v. Kleindienst, 741 F.2d 1406, 1415 (D.C. Cir. 1984)).[3] State Farm responds that "individual questions overwhelm questions common to the class," Def's Opp'n at 16 (internal quotation marks omitted), because "[t]he existence of compensable diminished value is the foundation for State Farm's liability, and it requires [ ] individual[ized] determination[s]," id. at 17.

The Court agrees that State Farm's liability cannot be established on a class-wide basis. Although the plaintiffs' view of the common issues has some merit, they obfuscate a critical issue: that State Farm's liability turns on a threshold determination of whether State Farm was required to pay the putative class members diminished value losses. In order to determine "whether State Farm breached its contract, violated consumer protection laws, or violated the duty of good faith and fair dealing in failing to adjust losses to include [diminished value]," Pls.' Mot. at 30, the plaintiffs must first show that the proposed class members were injured, and this requires showing that they were entitled to the diminution in value of their respective vehicles and that State Farm failed to pay those damages, see Def.'s Opp'n. at 17. This threshold inquiry inevitably requires individualized determinations, which defeats the predominance requirement

---

[3] If damages were the only aspect of the plaintiffs' claims that required individualized determinations, the Court could "bifurcate liability and damages; appoint a special master to preside over individual damages proceedings; decertify the class after the liability trial; create subclasses, or alter or amend the class." Daskalea v. Wash. Humane Soc'y, 275 F.R.D. 346, 381 (D.D.C. 2011). However, it is not the individual calculation of damages that destroys predominance, but the individual determinations of liability that causes the Court to deny certification under Rule 23(b)(3). Bifurcation does not overcome the fact that State Farm's liability can only be determined through individualized analysis given that the plaintiffs' theory of liability and damages calculation are essentially one and the same.

11

of Rule 23(b)(3). <u>Kottaras</u>, 281 F.R.D. at 25 (finding that the predominance requirement was not met because "a showing of widespread injury to the class is necessary for certification and [the] [p]lantiff failed to propose a means of establishing this through common evidence"); <u>see also Daskalea</u>, 275 F.R.D. at 369 (denying class certification under Rule 23(b)(3) after finding that "liability determinations will necessarily be individualized"). Critically, this threshold determination of liability requires the same individualized calculation of diminished value that is the measure of damages for each individual class member. Thus, framing the calculation of diminished value as an issue to be resolved at the damages stage ignores the fact that the same calculation must be made to determine State Farm's liability. Therefore, because State Farm's liability can only be determined on a case-by-case basis, the Court finds that individual questions predominate over common ones, and accordingly, the proposed class cannot be certified under Rule 23(b)(3).

A misinterpretation of District of Columbia law contributes to the plaintiffs' inability to satisfy the predominance requirement of Rule 23(b)(3). In 2005, in <u>American Service Center Associates v. Helton</u>, the District of Columbia Court of Appeals held

> that when a plaintiff can prove that the value of an injured chattel after repair is less than the chattel's worth before the injury, recovery may be had for both the reasonable cost of repair and the residual diminution in value after repair, <u>provided that the award does not exceed the gross diminution in value</u>,

867 A.2d 235, 243 (D.C. 2005) (emphasis added). The plaintiffs claim that the "'remaining reduction in value after repairs are made' is recoverable as 'residual diminution in value.'" Pls.' Mot. at 3 (quoting <u>Helton</u>, 867 A.2d at 241). This proffered description, however, fails to account for the critical limitation articulated by the District of Columbia Court of Appeals in <u>Helton</u> that "the award [may] not exceed the gross diminution in value." See 867 A.2d at 243. The plaintiffs' misinterpretation of the applicable law, upon which their argument is founded, is

12

a significant flaw in their analysis and undermines their ability to satisfy the predominance requirement of Rule 23(b)(3) because the Court cannot simply use a failure to pay a residual diminution in value as a proxy for liability. Instead, the Court must, for each individual class member, determine whether the class member is entitled to additional monies in excess of the cost of repairs in light of the fact that recovery shall not exceed the gross diminution of value. Specifically, whether each proposed class member is entitled to recover damages resulting from the diminution in value depends on four variables: (1) the market value of the car before the accident, (2) the market value of the car after the accident, (3) the market value of the car after repairs, and (4) the cost of repairs. See Def.'s Siskin Reply at 4.

The example that the court in Helton provided is illustrative of the individualized nature of determining liability under District of Columbia law:

> [I]f a car worth $40,000 is worth only $25,000 after being damaged, it has suffered a $15,000 gross diminution in value. If after repairs of $10,000, the car is worth $30,000, the residual diminution in value is $10,000. Although the cost of repairs and residual diminution in value total $20,000, the award is capped at $15,000, the gross diminution in value.

867 A.2d at 243 n.10. In this example, the owner of the car is entitled to recover the cost of the repairs and an additional $5,000 from the insurance company as compensation for the diminution in value of the vehicle. However, a slight variation of the example discussed in Helton results in a different conclusion as to the insurance company's liability. For example, if car worth $40,000 is worth only $25,000 after being damaged, it has suffered a $15,000 gross diminution in value. If after repairs of $15,000, the car is worth $35,000, the residual diminution in value is $5,000. Although the cost of repairs and residual diminution in value total $20,000, the award is capped

13

at $15,000, the gross diminution in value.[4] In this modification of the example discussed in Helton, the insurance company need not pay the diminution of value because the vehicle owner's recovery would be capped at $15,000, the gross diminution of value, which would be satisfied by the insurance company's payment for the cost of repairs. In sum, in the example provided in Helton, an insurance company, such as State Farm, is obligated to pay an additional $5,000 to the insured as diminished value, and a failure to pay may expose the insurance company to liability, while in the second example, the insurance company has no legal obligation to pay additional monies by operation of District of Columbia law.

The plaintiffs' efforts to avoid the individualized nature of the liability calculations are unavailing. The plaintiffs cannot overcome the individualized nature of the liability issues by defining the class to include only "vehicle[s] [that] suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work." Pls.' Mot. at 2. Even if the Court were to give the plaintiffs the benefit of the doubt that "[r]epair of these types of damage . . . reduce[s] the vehicle's fair market value," id. at 4–5, the need to determine whether the cost of repairs and the residual diminution in value exceeds the gross diminution in value, an assessment that must be made on a case-by-case basis, nevertheless remains.

The plaintiffs also argue that "State Farm can limit recoveries in any individual case in which it can establish as an affirmative defense that the recoverable residual diminished value put forward exceeds gross diminished value," Pls.' Reply at 3, and that State Farm can "present evidence of gross diminished value in any particular case and presumably be entitled to a setoff

---

[4] The vehicle in this example would not be declared a total loss that would be excluded from the class definition, Pls.' Mot. at 2, pursuant to D.C. Code § 50-1331.01 (2012), which defines a salvaged car as one that "[h]as been damaged, destroyed, [or] wrecked . . . to the extent that the total estimated or actual cost of parts and labor to rebuild or reconstruct the vehicle to its pre-damaged condition . . . exceeds 75 percent of the retail value of the vehicle prior to such damage[.]"

on those claims," id. at 12. However, this argument is without merit. The plaintiffs have failed to propose a means of establishing widespread injury to the class. To address "deductions for prior overlapping damage . . . as part of the eventual damage model," id. at 2–3, as suggested by the plaintiffs, puts the cart before the horse and in effect allows the plaintiffs to circumvent the requirements for class certification. The plaintiffs cannot bypass establishing predominance on the basis that State Farm can offset individual overpayments during the damages phase of the case. See Kottaras, 281 F.R.D. at 25 (concluding that because "benefits must be offset against losses, it is clear that widespread injury to the class simply cannot be proven through common evidence"); see also Little, 249 F. Supp. 3d at 425 (finding that the plaintiffs fail to meet the predominance requirement because they "have offered no way to avoid the need to evaluate individual defenses").

Additionally, the plaintiffs rely heavily on a Washington state court's certification of a class identical to the class proposed in this case to support their argument that predominance is satisfied, representing that "[u]nder nearly identical circumstances as exist in this case, the trial and appellate courts in Moeller v. Farmers Insurance Co. properly found predominance where [they] 'identified the common nucleus of operative facts, namely, that class members shared the same insurance policy, potentially suffered damage, and were allegedly harmed by Farmers[ ] [Insurance Company's] course of conduct.'" Pls.' Mot. at 30 (quoting Moeller v. Farmers Ins. Co. of Wash., 229 P.3d 857, 865 (Wash. Ct. App. 2010)). However, as correctly noted by the defendant, "the State of Washington's diminished value case law . . . is different from the District of Columbia's." Def.'s Opp'n at 14. Specifically, "Washington does not appear to take gross diminished value into account in analyzing whether diminished value exists and is compensable, in contrast to the controlling District of Columbia law articulated in Helton." Id. at

27; compare Moeller, 229 P.3d at 862 n.10, with Helton, 867 A.2d at 243. Therefore, the plaintiffs' reliance on the Washington state court decision in Moeller is misplaced.

Because the individual issues in this case relating to liability predominate over issues common to the proposed class, the plaintiffs have failed to establish the predominance requirement of Rule 23(b)(3); therefore, the Court must deny class certification.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Dr. Siskin's testimony must be excluded as irrelevant and unreliable because it fails to calculate damages as required by the governing law in the District of Columbia. The Court also concludes that it need not address whether Angelo Toglia Jr.'s testimony is admissible because it is not relevant to the Court's basis for denial of class certification. Finally, the Court concludes that the plaintiffs cannot establish liability on a class-wide basis because whether State Farm was required to pay the diminution in value of the putative class members' vehicles requires individualized determinations, and therefore concludes that the plaintiffs have failed to show that common issues predominate over individual issues. Accordingly, the Court will grant State Farm's motion to exclude the proffered expert testimony of Dr. Siskin, deny as moot State Farm's motion to exclude the proffered expert testimony of Toglia, and deny the plaintiffs' motion for class certification.

**SO ORDERED** this 24th day of January, 2019.[5]

REGGIE B. WALTON
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.